Harry A. BROWN, Eddie M. Andrews, Dennis Normile and Kenneth E. Guth, Plaintiffs-Appellants,

v.

Jack REARDON, Mayor; Robert Zahnter, Street Commissioner; City of Kansas City, Kansas, and John P. Biscanin, Special Administrator of the Estate of Patrick Hanlon, Defendants-Appellees.

Nos. 83–2484 to 83–2487.

United States Court of Appeals, Tenth Circuit.

Aug. 19, 1985.

John H. Fields (Gail A. Bruner, with him on brief) of Carson, Fields, Asner & Carson, Kansas City, Kan., for plaintiffs-appellants.

J. Nick Badgerow of McAnany, Van Cleave & Phillips, Kansas City, Kan., for defendant-appellee Jack Reardon.

Edward H. Powers, Sr., Kansas City, Kan., for defendant-appellee, City of Kansas City, Kan.

Edward M. Boddington, Jr. (David Hauber, with him on brief) of Boddington & Brown, Kansas City, Kan., for defendant-appellee, Robert Zahnter.

George Maier, Jr. of Weeks, Thomas & Lysaught, Kansas City, Kan., on brief for defendant-appellee, Patrick Hanlon (Deceased).

Before BARRETT, SETH and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

In these consolidated cases, Plaintiffs-Appellants, Harry A. Brown, Eddie M. Andrews, Dennis Normile and Kenneth E. Guth, appeal the district court's order granting summary judgment to Defendant-Appellee, City of Kansas City, Kansas (City), and its directed verdict to Defendants-Appellees, Jack Reardon, Mayor, Patrick Hanlon, Finance Commissioner, and Robert Zahnter, Street Commissioner of City of Kansas City, Kansas, in their civil rights action alleging discriminatory job layoffs in violation of the First and Fourteenth Amendments to the Constitution and 42 U.S.C. §§ 1983, 1985 and 1986. The crux of appellants' complaint was that their layoffs from the Water Pollution Control Department of City resulted from their refusal to purchase a block of tickets for annual political fund raisers sponsored and held by the individual defendants and, further, to pay money into a political organization known as "The 83 Club." Appellants alleged that this political activity was, by implication, the policy and custom of City because it had been pursued by City's governing officials, the individual defendants, as a political patronage or "spoils" system, constituting a conspiracy based on the hiring and firing of employees strictly for political purposes.

The district court initially denied City's motion for summary judgment. However, following all pleadings, depositions,[1] affidavits and full discovery, City renewed its motion for summary judgment and the court granted this motion on October 6, 1983. The case proceeded to trial by jury against the three individual defendants, commencing on October 13, 1983. At the close of plaintiffs' evidence on October 20, 1983, the court granted the individual defendants' motion for directed verdicts. The district court entered its Memorandum and Order on October 21, 1983, reported as *Brown, et al. v. Reardon, et al.,* 611 F.Supp. 302 (D.Kan.1985).

### Factual Background

Appellants are former employees of City, attached to the Water Pollution Control Department, whose Director was one Gyula Kovack. This Department falls under the supervision of the Commissioner of Streets, Parks and Boulevards (L.R. Zahnter). It is *undisputed* that these layoffs were necessitated by the decision made by the Board of City Commissioners that all sewer general obligations bonds of City had to be retired from sewer service charges and this, in turn, dictated a reduction in the Department's work force. Thus, the need for the layoffs proper has not at any time been challenged. Large deficits would result if economy measures were not instituted.

The criteria for determination of the 26 employees in the Water Pollution Control Department to be terminated or laid off was established by Gyula Kovach, the Director. He adopted the following guidelines in determining those employees to be laid off: (1) any duplicated positions not needed would be abolished, (2) each employee's work skills would be evaluated to ascertain those most capable of performing several jobs, (3) the work records and performances of the employees would be eval-

uated, and (4) only if all other things were equal would the most senior employees be retained. Neither the Mayor nor the Board of City Commissioners was involved in the formulation of these criteria, nor did any of them direct Mr. Kovach in the decisions made.

Kovach testified that an employee's refusal to purchase tickets for fund raising on behalf of Street Commissioner Zahnter or refusal to contribute to "The 83 Club," a general political fund raising vehicle, played no part in his preparation of the list of those employees in the Department to be laid off. This testimony is undisputed. After the list was prepared by Mr. Kovach based on the aforesaid criteria, it was presented to Street Commissioner Zahnter who made no changes therein. In this regard, the Department is authorized by ordinance to make its own personnel decisions. The list was then submitted to the Personnel Director of City and in turn ratified by the Board of City Commissioners on January 7, 1982.

The plaintiffs testified at trial that they were contacted by Mr. Kovach, as Department head, relative to fund raising events on behalf of Street Commissioner Zahnter between 1979–1981, and that Mr. Kovach would ask how many tickets (at $10.00 each) they could use; these tickets were made available by Street Commissioner Zahnter's staff; the fund raising was to promote the re-election campaign of Zahnter and other city officials through "The 83 Club"; and the fund raising activities were general in scope, far beyond contacts with city employees. Kovach's *undisputed* testimony was that in the nine years he had worked for City, he knew of no incident in which any type of retribution was taken against a city employee who did not contribute, and that at no time did the Board of City Commissioners take any action or make reference to an employee who failed

---

1. Depositions were taken (by plaintiffs) of each plaintiff and, in addition, of Gene Galvin, Administrative Assistant to defendant L.R. Zahnter, Street Commissioner; L.R. Zahnter, Street Commissioner; Judy Novosel, Manager of the Administrative Department of Water Pollution Control; Kenneth Mai, Manager of the Information and Research Division of Water Pollution Control; and Gyula Kovach, the Director of Water Pollution Control.

or refused to purchase tickets or make contributions. There is nothing in any deposition or direct testimony of the plaintiffs that their failure to purchase tickets or contribute was a factor in the layoff determination. Evidence, objected to on hearsay grounds, was generously admitted by the trial court that: the Commissioners were supplied lists of contributors, which, of course, would reflect the names of City employees who contributed; the assistant to Mayor Reardon had been advised of harassment of employees who did not contribute; Street Commissioner Zahnter had been personally informed of alleged coercion of employees who elected not to make contributions. There was no evidence, however, that any of the defendants had any knowledge of, or participation in, political considerations (including contributions or failure to contribute) in employment decisions or that employees were told they had to contribute in order to retain their jobs. Tellingly, the record reflects that those employees laid off in the Department included both those who had regularly contributed to the individual Commissioners' re-election fund raisers and political clubs and those who had not contributed by purchase of tickets or contributions to political clubs. Many of the latter were retained by the City following the layoffs. Notwithstanding the lack of any direct evidence of defendants' alleged conspiratorial activities, appellants contend that the record as a whole supports a fair inference that the Mayor and the Board of City Commissioners were aware of and, in effect, placed their "stamp of approval" on the political activities aimed at discriminating against city employees who did not join in the scheme and that they conspired to punish plaintiffs in the layoff process in violation of their due process and First Amendment rights because they had elected not to make the political contributions.

We deem it important to note that this case *does not* involve a specific attack upon the validity of the political fund raising activities of the defendants *per se*. In other words, we are not here concerned with the question as to whether the activities are violative of a specific statutory prohibition, state or federal, such as the Hatch Act, *see United Public Workers of America (C.I.O.) v. Mitchell*, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), or loss of tax exempt status by a religious organization engaged in substantial activity intended to influence legislation or participate in political campaigns on behalf of specific candidates for public office. *See Christian Echoes National Ministry, Inc. v. United States*, 470 F.2d 849 (10th Cir.1972), *cert. denied*, 414 U.S. 864, 94 S.Ct. 41, 38 L.Ed.2d 84 (1973). Rather, in this case the question is whether, *as a matter of fact*, there is any evidence that the challenged political activities, i.e., ticket sales for individuals or contributions to "The 83 Club," played any part in the job layoffs.

The district court properly observed that in order for plaintiffs to establish a *prima facie* case on this claim, it was their burden to establish that "a motivating or substantial factor in defendants' decision to terminate them was their failure to buy tickets or contribute to 'The 83 Club.' *Nekolny v. Painter*. 653 F.2d 1164, 1168 (7th Cir. 1981)." (Memorandum and Order of October 21, 1983, page 6, Appendix to Briefs, Vol. I, p. 262.)

On appeal, appellants raise the following contentions for our review: (1) whether, giving the plaintiffs the benefit of all legitimate inferences that could be properly drawn from the facts of the record *at the conclusion of discovery*, genuine issues of material fact existed as to the liability of defendant City relative to the wrongful discharge of plaintiffs in that the discharge was an official act of the governing body or, in the alternative, that it had become the custom of City to make political considerations and political support a condition of employment, coupled with the failure of the governing body of City to institute internal rules and programs designed to minimize the likelihood of intentional and unintentional violation of employees constitutional rights, (2) whether the trial court erred in sustaining (granting) the defendants, Jack Reardon, Patrick Hanlon and L.R. Zahn-

ter's motion for directed verdict at the conclusion of the plaintiffs' evidence when the direct and circumstantial evidence, viewed in the light most favorable to plaintiffs (a) established a "prima facie" case under 42 U.S.C. § 1985(3) of class-based invidious discriminatory animus behind the plaintiffs' wrongful discharge from their public employment (Brief of Appellants, p. 1), (b) established that all three defendants had knowledge and participated in plaintiffs' wrongful discharge from their public employment, (c) established a prima facie case under 42 U.S.C. § 1986 of each said defendant's liability to plaintiffs for failure to prevent the plaintiffs wrongful discharge from their public employment, (d) established prima facie that plaintiffs had a reasonable expectation of continued employment with City and that plaintiffs pursued their grievance concerning their termination to the extent required by law, and (e) established a prima facie case under § 1983 that the plaintiffs' wrongful discharge from their public employment was substantially the result of their failure to make political contributions. Appellants also contend that the trial court erred in various evidentiary rulings and in granting defendants, Jack Reardon and Patrick Hanlon, protective orders.

## I.

Appellants allege that the trial court erred in granting summary judgment prior to trial but following all pleadings, depositions and discovery, on behalf of City by order of October 6, 1983. They contend that genuine issues of material fact existed as to whether their wrongful discharge from public employment with City was an official act of the governing body, or, in the alternative, the result of a custom of the City to permit political considerations and political support to be a condition of employment, coupled with alleged failure of the governing body of City to institute internal controls which would minimize or eliminate such violations. We are mindful that it is our obligation, upon review of a grant of summary judgment, to view the evidence in the light most favorable to the opposing party. *World of Sleep, Inc. v. La-Z-Boy Chair Co.,* 756 F.2d 1467 (10th Cir.1985), and to determine whether the proper substantive law was applied by the district court. *Martelon v. Temple,* 747 F.2d 1348 (10th Cir.1984).

Appellants rely primarily on *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), to support their contention that City is liable under § 1983. In that case, the Supreme Court held that a municipality may be liable in a § 1983 action if the City implements or executes a policy, ordinance, regulation or decision officially adopted by the City's governing officers, or permits deprivations resulting from established City custom which, although without formal sanction, is nevertheless adopted and approved by the City's policymakers.

The record before the district court when it granted City's motion for summary judgment was uncontroverted in these basic, material facts: none of the defendants was aware of the activity, if such existed, to place pressure or coercion on City employees to purchase tickets or make membership contributions to "The 83 Club"; the defendants constitute the governing body of City; and the defendants, as the Board of City Commissioners, did not undertake the practice of solicitation of City employees for political contributions by ordinance, official policy or custom. In short, there is absolutely *no evidence,* as the district court found, that these defendants, as City's governing authority, had any knowledge of the alleged discriminatory activity. It would require rank speculation and conjecture to bridge the allegation with fact. The District Court properly addressed this area:

> The court [*Monell v. Department of Social Services of the City of New York, supra*] further stated, however, that:
>
> "... Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.... a municipality cannot be held

liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691 [98 S.Ct. at 2036]. (Emphasis in original.)

Applying *Monell* to the case at bar, the court finds that no policy, custom, ordinance or regulation, either written or unwritten, formally adopted or informally adopted, promulgated the acts of which plaintiffs complain. If any such acts did occur, the court finds they must be attributed to lower eschelon employees, thereby preventing liability on the City, in that *Monell* prevents the City from being liable on any § 1983 claim where the basis of such liability stems solely from an employer/employee relationship. *Monell* clearly states that a municipality cannot be held liable solely because it employs a tortfeasor.

The court further finds, after considering the evidence before it, that plaintiffs have failed to produce evidence of any specific conspiratorial act by the City which was designed to discriminate against any of these plaintiffs by depriving them of employment because they did not make political contributions.

Appendix, Vol. II, pp. 545, 546.

We agree. The record is barren of any evidence to support plaintiffs'-appellants' suit against City. It is important to observe that no contention is made in this record that the political activities undertaken herein are violative of any constitutional provision or statutory or local law. It is the alleged termination of employment *because* of the plaintiffs' refusal to participate in those activities that is the core of plaintiffs' action: they claim that they were discriminated against in employment for exercising their First Amendment right to refuse to participate in the political activity and denied due process of law in their terminations.

In *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981), the Supreme Court reiterated the *Monell* doctrine that local governmental units may be liable for unconstitutional deprivations caused by their employees, not on the basis of *respondeat superior* (which was expressly rejected) but only under circumstances whereby the deprivation could evidence an implicit official policy grounded upon a pattern of abuses. In the instant case, our review of the record convinces us that there was one and only one incident of employment termination in evidence here—thus, no pattern or practice of terminating employees of City for failure or refusal to purchase tickets or contribute to "The 83 Club" is before us. *Monell* made it clear that "the mere right to control without any control having been exercised and without any failure to supervise is not enough to support Section 1983 liability." 436 U.S. at n. 58, 98 S.Ct. at n. 58. In *McClelland v. Facteau,* 610 F.2d 693 (10th Cir.1979), we held that the doctrine of respondeat superior may not be invoked to hold a police chief liable under § 1983 for misconduct of a subordinate officer which amounts to a constitutional deprivation; however, a police chief may be liable under § 1983 if there is evidence that he breached his duty to train subordinates or to establish department procedures to provide protection of constitutional rights. Those cases generally arise in the context of police misconduct, involving acts of blatant brutality, excessive force or unlawful arrest and detention. *See, e.g. Wise v. Bravo,* 666 F.2d 1328 (10th Cir.1981); *Kite v. Kelley,* 546 F.2d 334 (10th Cir.1976). In *Norton v. Liddel,* 620 F.2d 1375 (10th Cir.1980), we held that a sheriff who conspired with a private individual with the intent and design to deprive another of rights guaranteed under the Constitution was acting under color of state law creating his liability under § 1983. And in *Dewell v. Lawson,* 489 F.2d 877 (10th Cir.1974) we held that a complaint alleging failure of the chief of police to establish police procedures and to adequately train his subordinate personnel to protect against the infliction of cruel and unusual punishment stated a § 1983 cause of action, even though the chief of police was not present when the alleged deprivation occurred. Each of those and many

like cases involved actions or inactions of officials directly attributable to a governmental function which the official was obligated to perform. That is why the cases universally use language referring to liability grounded on official policy or custom which may be inferred as a result of a pattern, unless a particular single incident was brutal and within the knowledge of the defendant official.

In the instant case, the sale of tickets and/or solicitation of contributors to "The 83 Club" by Director Gyula Kovach did not involve any governmental function of the Water Pollution Control Department. Beyond this, there is no evidence which could establish a causal link between the activities of Director Gyula in the sale of the tickets and memberships in "The 83 Club" to plaintiffs'-appellants' layoffs. This is so because there is no evidence that the criteria employed by Director Gyula in determining those employees to be laid off was unfair or discriminatory either on its face or as applied. Thus, no reasonable inference could arise that the layoffs were the result of constitutional deprivations.

We have held that in order to find a municipality liable for a policy or custom of the city, it is generally necessary to establish, in order to rely on reasonable inferences, that the conduct resulting in deprivation of constitutional rights was one which existed and continued over a reasonable period of time showing, in effect, an indifference to train, supervise or discipline those employees who were the "actors" in the deprivations. *Varela v. Jones*, 746 F.2d 1413 (10th Cir.1984); *McClelland v. Facteau, supra.* In *Miller v. City of Mission, Kan.*, 705 F.2d 368, 374–75 (10th Cir. 1983), we said:

> Local governing bodies are liable for constitutional deprivations when the improper action stems from a "decision officially adopted and promulgated by that body's officers." *Monell v. New York City Department of Social Services*, 436

U.S. 658 [98 S.Ct. 2018, 56 L.Ed.2d 611] ... (1978).

This court has held that a defendant city official is liable under section 1983 "when the defendant was in a position of responsibility, knew or should have known of the misconduct, and yet failed to act to prevent future harm." *McClelland v. Facteau*, 610 F.2d 693, 697 (10th Cir.1979).

There are a variety of *actions* taken by a variety of public employees in the conduct of their governmental duties involving day-to-day discretion in terms of the mechanics of their various work assignments. In the course of time, many such employees, including supervisors or department heads, determine that work procedures be undertaken in a particular manner. Such determinations may, in the context of the Civil Rights Act, appear to one offended thereby to constitute governing policy or custom. If this were the applicable rule, all subordinate or lower echelon public employees would surely be treated as policymakers, whose decisions would, in turn, be those of the governing body of the City. We do not believe *Monell* or any other opinion of the Supreme Court of the United States permits the use of such a broad sweep in order to infer a policy or custom attributable and chargeable to the City or its governing body.

We affirm the district court's grant of City's motion for summary judgment.

·II.

Appellants contend that the district court erred in granting the individual defendants' motion for directed verdict at the conclusion of the plaintiffs' case-in-chief. Appellants contend that the evidence, both direct and circumstantial, together with all reasonable inferences to be drawn therefrom, viewed in the light most favorable to the plaintiffs, (a) established a "prima facie" case of class-based invidious discriminatory animus under 42 U.S.C. § 1985 (3) [2] dis-

---

**2.** If two or more persons in any state ... conspire ... for the purpose of depriving ... any person or class of persons of the equal protec-

tion of the laws, or of equal privileges and immunities under the law ... [shall be liable to the party so deprived] for the recovery of dam-

charge, (b) established that the three individual defendants had knowledge of and participated in the wrongful discharges, (c) established a prima facie case under 42 U.S.C. § 1986[3] for failure of defendants to prevent plaintiffs' wrongful discharge, (d) established a prima facie case that plaintiffs had a reasonable expectation of continued employment with City and that plaintiffs pursued their grievance to the extent required by law, and (e) established a prima facie case under 42 U.S.C. § 1983[4] that their wrongful discharge was substantially the result of their failure to make political contributions. The deprivation is posited both as one of due process of law and as a violation of their First Amendment right to elect not to contribute to the purchase of the tickets or to "The 83 Club."

■ On review of the grant of a motion for directed verdict pursuant to Fed.R. Civ.P. 50(a), the evidence must be viewed in the light most favorable to the party opposing the motion. A motion for directed verdict "should be cautiously and sparingly granted." *Black, Sivalls & Bryson, Inc. v. Keystone Steel Fab.*, 584 F.2d 946, 951 (10th Cir.1978), quoting from *Wilkin v. Sunbeam Corp.*, 377 F.2d 344, 347 (10th Cir.1967). If reasonable men could differ as to inferences to be drawn from the facts in evidence, the motion should be denied. However, the trial court's decision on a motion for directed verdict will not be reversed unless, upon review, the appellate court finds that the trial court's evaluation of the evidence was clearly erroneous. *Irving v. Dubuque Packing Co.*, 689 F.2d 170 (10th Cir.1982); *Kiner v. Northcutt*, 424 F.2d 222 (10th Cir.1970).

■ During trial, as distinguished from the record before the court when City's motion for summary judgment was granted, the plaintiffs did offer evidence that: the activity of soliciting City employees for purchase of tickets or otherwise making political contributions (such as "The 83 Club) had been pursued for several years; the defendant commissioners were aware that City employees had contributed to their campaign funds; prior to their layoffs, Street Commissioner Zahnter had been told of coercion imposed on employees to purchase tickets and to contribute; and this information had been conveyed to Mayor Reardon's assistant and to Mr. Davis, City's Personnel Director. This evidence could, we believe, support the plaintiffs' contentions that there had in fact been pressure brought to bear upon them by Director Kovach to purchase tickets and to make political contributions on behalf of defendants and others. Even so, there is no proof in this record, with all reasonable inferences applied, that the termination of the plaintiffs was in any way related to their failure to contribute. It was incumbent upon plaintiffs to establish that their terminations were in reprisal for the exercise of their First Amendment right not to contribute or support any political causes, in that the First Amendment is made applicable to the states by the Fourteenth Amendment. *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977).

To the contrary, the record reflects that some employees who had contributed were nevertheless terminated and that there was no discernable pattern evidencing discrimination between those who had contributed and those who had not under the criteria adopted and applied by Mr. Kovach. This,

---

ages, occasioned by such injury or deprivation, against any one or more of the conspirators.

**3.** Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in ... [42 U.S.C. § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured ... for all damages caused by such wrongful

act, which such person by reasonable diligence could have prevented ...

**4.** Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party ...

just as the trial court found, is indicative that the criteria employed by Mr. Kovach in determining the twenty-six (26) employees of his Department to be laid off did not involve political considerations. Tellingly, we believe, is the fact that no direct challenge to the unfairness of the criteria in terms of plaintiffs' terminations is at issue on this appeal. We thus conclude that the trial court did not err in finding/concluding that "plaintiffs failed to show that any of the activity regarding ticket sales or contributions to 'The 83 Club' was tied in any manner to their resulting terminations. Plaintiffs failed to show that political considerations played any part, substantial or otherwise, in the selection process which was implemented to determine which employees would be laid-off. By failing to tie the political activity to the resultant layoffs, plaintiffs failed to establish their § 1983 claim." (Vol. I., Appendix, p. 262.) The trial court further found, and we agree, that the plaintiffs' contention that they established their case by circumstantial evidence was without merit. The court found that such evidence was comprised of mere inference upon inference, such as would dictate a jury verdict based on pure speculation. The trial court found that such evidence must be based upon more than mere conjecture, speculation or surmise. We agree. A directed verdict is proper when, as here, the evidence at trial permits only one reasonable conclusion.

### The 42 U.S.C. § 1983 Claim

The essential aspects of appellants' § 1983 claim are anchored to alleged denial of procedural due process in their terminations and violation of their First Amendment rights when action of termination in their employment was effected on the basis of political considerations.

As related previously, it is not the existence of a program of sale of tickets on behalf of the Mayor and Commissioners of City or the solicitation for contributions of "The 83 Club" which is the basis of the constitutional or legal challenge in this case; rather, appellants allege that their failure to purchase tickets or contribute was the motivating reason for their termination. We have heretofore pointed out that appellants did submit evidence involving these activities which likely would have created a *prima facie* case of employment discrimination involved in their terminations *if* they had established, even by fair inference, a bridge between these political activities *and* the alleged discrimination against them in the application of the *criteria* employed by Mr. Kovach, tacitly approved by the Board of Commissioners and the Personnel Director. This the appellants failed to do. Appellants contend, however, that even after their layoffs the Department hired "numerous new employees" without ever calling any of appellants back. (Brief of Appellants, p. 39.) Here again we observe that there is no contention advanced by appellants that the work assignments of the "numerous new employees" is similar to that which appellants performed or that the "numerous new employees" purchased tickets or made other political contributions.

With regard to the due process claim, the trial court properly held that the appellants here did not have written contracts, tenure or reasonable expectations of continued employment with City and, accordingly, were employees at will. *Johnson v. National Beef Packing Company*, 220 Kan. 52, 551 P.2d 779 (1976); *Johnston v. Farmers Alliance Mutual Insurance Company*, 218 Kan. 543, 545 P.2d 312 (1976). Thus, under *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the appellants had no "liberty" or "property" interest in continued employment. They did not have a legitimate claim of entitlement to continued employment. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). We agree with the district court's finding that the appellants had no property interest in employment with City and thus were not deprived of any protected procedural right in their terminations or continued employment. *Garcia v. Wilson*, 731 F.2d 640 (10th Cir., 1984), (En Banc). In this case, the appellants were not stigmatized by City

or appellees in their terminations. Absent such circumstances, there is no due process requirement that a public employee must be afforded the opportunity of pre-termination to test the validity of the grounds advanced for his termination. *McGhee v. Draper,* 639 F.2d 639 (10th Cir.1981); *Staton v. Mayes,* 552 F.2d 908 (10th Cir.), *cert. denied,* 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977); *Weathers v. West Yuma County School District R–J 1,* 530 F.2d 1335 (10th Cir.1976).

■ Appellants also urge that their rights under the First Amendment were infringed by defendant because action was taken against them for refusal on their part to participate in political activities for the benefit of defendants. In actions arising out of termination of public employment based on allegation of conduct protected by the First Amendment, the burden is on the plaintiff to establish, by a preponderance of the evidence, that the protected activity was a "substantial" or "motivating" factor in the termination. *Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981) (allegation that employment was terminated because plaintiffs-appellants campaigned on behalf of appellee's political opponent).

In *Nekolny,* the Court observed that *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) held that employees in the Cook County Sheriff's office could not be terminated *solely* because of their partisan political activity, unless the employee held a close policy position with the Sheriff. In *Mount Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court held, in the case of the termination of a non-tenured teacher, that the plaintiff teacher failed in his burden of showing that he was not rehired because he exercised protected First Amendment rights. The Court held that the plaintiff was required to establish that the First Amendment conduct was a "substantial factor" in the Board's decision not to renew his contract, and that plaintiff failed to establish this by a preponderance of the evidence. This court has likewise

placed such a burden on a plaintiff who alleged that the nonrenewal of his nontenured public school contract was predicated on his exercise of First and Fourteenth Amendment rights. *Smith v. Losee,* 485 F.2d 334 (10th Cir.1973), *cert. denied* 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974).

We agree with the trial court's finding/conclusion that appellants failed to carry the burden of proof required to make out a *prima facie* case under § 1983.

### The 42 U.S.C. § 1985 Claim

■ The district court properly treated this section in concluding that appellants had failed to establish a *prima facie* case against defendants. § 1986 is dependent upon the validity of a § 1985 claim. *Brown v. Chaffee,* 612 F.2d 497, 502 (10th Cir.1979). The trial court found that appellants had failed to establish, pursuant to § 1985(3), that their terminations were motivated by class-based animus. The appellants have conceded throughout that class-based discrimination must be established in order to invoke § 1985(3) but contend "... that a 'class' is not, as the trial court would imply, limited to classifications based on ... race, sex, religion or national origin." ... [but] ... In fact, a number of courts have held that those discriminated against due to their political beliefs or their expression of the same, as allowed under the First Amendment, constitute protected classes for purposes of 42 U.S.C. § 1985(3)." (Brief of Appellants, p. 47.)

We cannot accept appellants' contention. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), relied on by the trial court, does require competent evidence of some racial or other class-based invidious discriminatory animus behind the actions of defendants. The trial court observed that when appellants were questioned about the basis relied on, they claimed that they were "members of a group or class who had opposed to political conduct of the defendants and as such met the 'class' requirement of § 1985(3)." (Appendix to Briefs, Vol. I, p. 259.) The court

held, and we agree, that appellants failed to show that they were members of a recognized class and, further, they failed to show class-based discrimination sufficient to invoke § 1985(3).

The Supreme Court has, in our view, consistently required a showing of a class-based animus in order to establish a § 1985 action. In *United Brotherhood of Carpenters and Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Court revisited *Griffin*. The initial issue decided in *Scott* was whether § 1985(3) protection reached purely private conspiracies. The case arose from union-sponsored violence directed against non-union employees. The Court of Appeals had held that it was not necessary to establish state involvement in *Scott* in order to render injury to First Amendment rights redressable under § 1985(3). The Supreme Court disagreed and concluded that "an alleged conspiracy to infringe First Amendment rights is not a violation of § 1985(3) unless it is proved that the state is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the state." *Id.* at 830, 103 S.Ct. at 3356. Furthermore, the Court did not agree with the Court of Appeals' "view that there was present here the kind of animus that § 1985(3) requires." *Id.* at 831, 103 S.Ct. at 3357. The *Scott* case required a two-pronged analysis under § 1985(3): first, is there state involvement in the conspiracy alleged; secondly, is there a showing of class-based invidious discrimination animus? Even though the controlling issue in *Scott* did not involve the issue of class-based animus required in a § 1985(3) action based on a First Amendment deprivation, the Court's analysis left no room for exceptions thereto:

> The Court of Appeals accordingly erred in holding that § 1985(3) prohibits wholly private conspiracies to abridge the right of association guaranteed by the First Amendment ... in our view the Court of Appeals should also be reversed on the dispositive ground that § 1985(3)'s requirement that there must be "some racial, or perhaps otherwise class-based,

invidiously discriminatory animus behind the conspirators' action," *Griffin v. Breckenridge*, 403 U.S., at 102 [91 S.Ct. at 1798], was not satisfied in this case. *Id.* at 833, 103 S.Ct. at 3358.

The *Scott* opinion, in discussing the principle derived from *Griffin*, reasoned that in order to prevent § 1985 actions from becoming the source of a general federal tort law, it is necessary to invoke the animus requirement. The Court observed, given the legislative history of the statute, that the animus language in *Griffin* "[w]as warranted by the legislative history, was reaffirmed in [*Great American S & L Ass'n v.*] *Novotny* [442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957] ..., and we accept it as the authoritative construction of the statute." *Id.* at 835, 103 S.Ct. at 3359.

*Murphy v. Mount Carmel High School*, 543 F.2d 1189 (7th Cir., 1976), was cited with approval in *Scott* for the proposition that state involvement is necessary in stating a 1985 claim stemming from alleged First Amendment deprivations. *Murphy* said nothing about the class-based animus requirement being inapplicable. On the contrary, the opinion demonstrates the court's recognition of the crucial nature of the class-based animus requirement. The court stated: "Senese has also argued that a showing of class-based invidiously discriminatory animus is unnecessary. This proposition seems to fly in the face of *Griffin*, and has been rejected by this court." *Id.* at 1192 n. 1. Thus, in our view, *Murphy* does not support the departure from the class-based animus requirement.

This court has applied the class-based animus requirement, consistent with *Griffin*. See, *Taylor v. Gilmartin*, 686 F.2d 1346 (10th Cir.1982), *cert. denied* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983); *Silkwood v. Kerr-McGee Corp.*, 637 F.2d 743 (10th Cir.1980), *cert. denied* 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981); *Lessman v. McCormick*, 591 F.2d 605 (10th Cir.1979).

*Wilhelm v. Continental Title Company,* 720 F.2d 1173 (10th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984), contains a discussion of the class-based animus requirement in *Griffin* and *Scott.* In concluding that handicapped persons could not be a class within the meaning of § 1985, this court stated:

> In summary as to the *Scott* opinion, we find nothing therein to give any encouragement whatever to extend § 1985 to classes other than those involved in the strife in the South in 1871 with which Congress was then concerned. In fact from *Scott* we get a signal that the classes covered by § 1985 should not be extended beyond those already expressly provided by the Court. *Id.* at 1176.

The *Wilhelm* opinion did not consider the segment of the general issue here concerned. However, it does support the contention that *Griffin* and *Scott* preserve the class-based animus requirement as the only effective means to prevent the evolution of a general federal common law of torts arising from § 1985 cases. The *Griffin* approach is strict, and that appears to be precisely the approach the Court vindicated in *Scott.* "The statute [§ 1985(3) ] was intended, perhaps more than anything else, to provide redress for victims of conspiracies impelled by a commingling of racial and political motives." (Footnote omitted.) *Hampton v. Hanrahan,* 600 F.2d 600, 623 (7th Cir.1979). *See also, Taylor v. Brighton Corp.,* 616 F.2d 256 (6th Cir.1980); *Alexander v. Unification Church of America,* 634 F.2d 673 (2nd Cir.1980).

*The 42 U.S.C. §§ 1986 and 1988 Claims*

■ The district court did not err in finding that the § 1986 claim is dependent upon the existence of a valid claim under § 1985. *Brown v. Chaffee,* 612 F.2d 497 (10th Cir. 1979); *Campbell v. Amax Coal Co.,* 610 F.2d 701 (10th Cir.1979); *Lessman v. McCormick,* 591 F.2d 605 (10th Cir.1979); *Taylor v. Nichols,* 558 F.2d 561 (10th Cir. 1977).

■ The district court did not err in finding/concluding that appellants did not state a cause of action cognizable under § 1988. In *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), the Supreme Court held that § 1988, which authorizes the application of state law in federal civil rights suits in those cases where federal law does not provide a suitable remedy does not, without more, justify the application of state causes of actions into federal law, even to protect federal civil rights. Furthermore, § 1988 is supplementary to 42 U.S.C. § 1985; where it has been held that the plaintiff has failed to state a cause of action under § 1985, the § 1988 claims must be dismissed. *Boling v. Natural Zinc Co.,* 435 F.Supp. 18 (N.D.Okla.1976). § 1988 defines procedures under which remedies may be sought in civil rights actions, but it does not create independent causes of action.

It has been consistently ruled that § 1988 permits the award of costs and attorney fees to a prevailing plaintiff in a civil rights action. *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Roadway Express v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *Cooper v. Singer,* 719 F.2d 1496 (10th Cir.1983); *Gurule v. Wilson,* 635 F.2d 782 (10th Cir.1980). The appellants have failed to prevail in the district court and on this appeal.

■ We have carefully considered the remaining allegations of trial court error advanced by appellants, including the challenged evidentiary rulings, the grant of the protective order to defendants Reardon and Hanlon, and the denial of plaintiffs' motion to compel discovery. We hold that in each instance the district court did not abuse its discretion to the prejudice of the plaintiffs. A trial court's conduct of trial proceedings, including rulings on motions and objections, will not be disturbed on appeal unless it affirmatively appears from the record that the trial court abused its discretion. Fed.R.Civ.P. 52(a); *Rasmussen Drilling v. Kerr-McGee Nuclear Corp.,* 571 F.2d 1144

(10th Cir.), *cert. denied,* 439 U.S. 862, 99 S.Ct. 183, 58 L.Ed.2d 171 (1978). No error in either the admission or the exclusion of evidence and no error in any ruling or order or in anything done or omitted by the trial court or by the parties is ground for granting a new trial or for setting aside a verdict unless the error or defect affects the substantial rights of the parties. Fed. R.Civ.P. 61; *Harris v. Quinones,* 507 F.2d 533 (10th Cir.1974); *Herron v. Rozelle,* 480 F.2d 282 (10th Cir.1973). The trial court's conduct of trial proceedings, including rulings on motions and objections, will not be disturbed on appeal unless it affirmatively appears from the record that the trial court abused its discretion. *White Motor Corporation v. Stewart,* 465 F.2d 1085 (10th Cir.), *cert. denied,* 409 U.S. 1061, 93 S.Ct. 561, 34 L.Ed.2d 513 (1972).

WE AFFIRM.

McKAY, Circuit Judge, concurring in part and dissenting in part:

While I concur with the court's decision to affirm summary judgment for the city, I respectfully dissent from the rest of the court's opinion.

Plaintiffs alleged claims under 42 U.S.C. §§ 1983, 1985 and 1986 against the city of Kansas City, Kansas, its mayor and the city commissioners. Due to budgetary restraints the city substantially curtailed its work force. Plaintiffs alleged that the defendants violated their civil rights by singling them out for this layoff because of their refusal to buy tickets to political fundraisers and to join a political club called the 83 Club. At the end of discovery, the district court entered summary judgment in favor of the city, holding that the plaintiffs had failed to show that the alleged discriminatory layoffs were the result of a city policy to use political considerations in making employment decisions.

At the end of plaintiffs' case, the court directed a verdict in favor of the remaining defendants on all of plaintiffs' claims. The court rejected plaintiffs' section 1983 first amendment claim because it found no evidence that the individual defendants knew of or participated in any actions that connected city employment with political contributions by the employees. The court rejected plaintiffs' section 1983 due process claim on the ground that the plaintiffs had failed to establish a property interest in continued employment. Finally, the court rejected plaintiffs' claims under 42 U.S.C. §§ 1985 and 1986 on the ground that plaintiffs had failed to show that they had been the target of some class-based, invidious, discriminatory animus.

Plaintiffs appeal, claiming that the trial court erred both in granting the city's motion for summary judgment and in ordering the directed verdict for the individual defendants.

I.

In *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality may be sued directly under section 1983 "when the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." In addition, a city may be liable "for constitutional deprivations visited pursuant to governmental 'custom,' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91, 98 S.Ct. at 2035–36. The trial court granted summary judgment for the city on the ground that the acts complained of were not pursuant to an official policy, since it found no evidence that the city commissioners knew that the employees were being terminated for their refusal to participate in political activities. However, contrary to the majority's reasoning, even if the court's finding that the commissioners knew nothing is correct, the actions may have been pursuant to official policy. *Monell* does not require that the policy originate at the highest levels of city government. If the city has delegated final decisionmaking authority to a lower level official, the decisions of that official

represent city policy. *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir.1983); *Bowen v. Watkins*, 669 F.2d 979, 989 (5th Cir. 1982).

The district court found that the standards for determining which employees were to be laid off were established by Gyula Kovach, the Director of the Water Pollution Control Department. The court found no evidence that the Board of City Commissioners reviewed those criteria. Thus, the record on summary judgment would support a finding that the Board, at least implicitly, delegated the final authority to determine the criteria for the layoffs to Mr. Kovach and his staff. If so, any policy he established with regard to the layoffs was a policy of the city whether or not the commissioners and the mayor knew of and participated in it.

While plaintiffs thus are correct in the assertion that policies articulated by Mr. Kovach can appropriately be considered policies of the city for which the city may be held liable, plaintiffs failed to meet their burden of showing that a legitimate issue of fact existed as to whether Mr. Kovach had established a policy of terminating employees for refusing to participate in political activity. Indeed, it was not until plaintiffs filed their appellate brief that they mentioned, in any of their memoranda regarding the city's motion for summary judgment, that the plaintiffs' depositions contained evidence of pressure by Mr. Kovach to collect political contributions from employees. Even in the appellate brief, plaintiffs have failed to direct the court to the depositions that contain this evidence. Thus, if there was evidence in the record at the time the motion for summary judgment was decided, plaintiffs failed to point it out to the trial court and have failed to point to anything from which this court could conclude that such evidence did in fact exist.

Rule 56 of the Federal Rules of Civil Procedure requires that:

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts* showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e). It is not sufficient for a party to have discovered evidence to support his theory of the case and merely assert to the trial court that he is prepared to go ahead with that evidence. Rather, a party is required to allege the facts he claims are in dispute and point *with specificity* to affidavits or other evidence in the record that supports his contention that the facts are, in reality, disputed. The closest plaintiffs come to specificity is to suggest that evidence supporting their position can be found in the plaintiffs' depositions. There are nearly 650 pages of plaintiffs' depositions in this case. The plaintiffs in effect asked the court to find the proverbial needle in a paper haystack. This is a task that neither this court nor the district court should be expected to do. Judges are not ferrets. *Nicholas Acoustics & Specialty Co. v. H & M Construction Co.*, 695 F.2d 839, 847 (5th Cir.1983). Thus, while plaintiffs have in my opinion asserted a theory of the case that, if proven, would entitle them to relief, plaintiffs have failed to show that there was evidence in the record at the time of summary judgment that would support their theory of the case. Therefore, while I disagree with the majority's analysis on this issue, I agree that the district court's entry of summary judgment in favor of the city should be affirmed.

## II.

Plaintiffs asserted two claims against the individual defendants under section 1983. The first is a deprivation of due process, and the second alleges a violation of plaintiffs' first amendment rights not to contribute to campaign funds. In order to establish a prima facie case, the burden was on plaintiffs to show that their conduct was constitutionally protected and that this conduct was a substantial factor or a motivating factor in the decision to lay them off.

*Mount Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). Thus, whether plaintiffs have met their burden turns on whether they have introduced sufficient evidence to support a reasonable inference that their refusal to contribute to campaign funds was a motivating factor in the decision to lay them off, and that the individual defendants knew of and participated in that decision, or should have known that this illegal criteria was being used in the layoff decisions. *See Brandon v. Holt,* — U.S. ——, 105 S.Ct. 873, 875, 83 L.Ed.2d 878 (1985).

At trial, plaintiffs introduced ample evidence that there was a wide-spread practice in the city government of coercing employees into making political contributions for the reelection of certain city officials. Plaintiffs also introduced evidence that the commissioners were aware that substantial financial support was being raised through city employees. Evidence was introduced that, prior to the decision to terminate the plaintiffs, Commissioner Zahnter had been informed about coercion and adverse employment decisions by city administrators based on employee failure to make political contributions. There was evidence that Mayor Reardon's assistant had been informed of the wide-spread harassment of those who chose not to participate in these political activities. Plaintiffs introduced evidence that the city's personnel director, Mr. Davis, had been informed about the alleged conduct prior to the terminations. In addition to this evidence that high-level city officials were being informed about the complained-of conduct, plaintiffs introduced evidence that people working the same jobs who had less seniority than plaintiffs, but who had purchased the political fundraising tickets, were not laid off, and that none of the plaintiffs were called back to the city although the city was hiring additional personnel. While perhaps none of the plaintiffs' evidence, taken alone, would support an inference that the city commissioners and the mayor knew and approved of the wide-spread political corruption in the city management, plain-

tiffs' evidence as a whole would support a jury inference that the individual defendants knew of and/or participated in the scheme to punish city employees who refused to make political contributions or, at least, should have known of the problem.

This type of case can seldom be proved by direct evidence and it has long been felt that it is the jury's province to draw what inference it will from the circumstantial facts. We have consistently affirmed even criminal cases on the basis of circumstantial evidence no more substantial than that relied on by plaintiffs in this case. Surely, if such facts would get a case to the jury when the standard of proof is "beyond a reasonable doubt," it was an abuse of discretion for the district court to direct a verdict in this case where the standard is mere preponderance of the evidence. The district court erred in granting defendants' motion for a directed verdict on this section 1983 claim. The case should be remanded for a retrial on the issue of whether the individual defendants participated in singling plaintiffs out for layoff in violation of the plaintiffs' first amendment rights because they had refused to make political contributions.

With respect to plaintiffs' due process claim, the trial court correctly held under *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779 (1976), that plaintiffs did not have a protected property interest in continued employment. After this case had been submitted on appeal, the Kansas court of appeals decided *Allegri v. Providence-St. Margaret Health Center,* 9 Kan.App.2d 659, 684 P.2d 1031 (Kan.App. 1984), which calls the district court's decision into question. However, *Allegri* is a sufficiently radical departure from the tone of *Johnson* that we cannot say with certainty that the Kansas Supreme Court would follow the *Allegri* analysis. This being the case, in my view, what has been settled by the district court is best left settled.

The district court also erred in dismissing plaintiffs' claims under 42 U.S.C. §§ 1985 and 1986. The district court based its dis-

missal on the assumption that section 1985(3) requires class-based animus even when state action is present and its finding that appellants had failed to establish a prima facie case that the discharges were motivated by class-based animus. The majority opinion's treatment of the issue of whether class-based animus is required when state action is a prerequisite to suit is wholly inadequate. The majority asserts that the issue has long since been decided, and we are bound to follow existing precedent. The rule espoused by the majority is illogical; and since it is not established precedent, we should not follow it. It is understandable that the Court in *United Brotherhood of Carpenters and Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), should state that "the Court of Appeals should also be reversed on the dispositive ground that section 1985(3)'s requirement that there be some racial, or perhaps otherwise class-based, invidiously discriminatory animus," maj. op. at 906, because the Court had just concluded that no state action was involved. The case tells us nothing of what the court would do if faced with a case such as this one, however, in which state action is present. Likewise, the other cases cited by the majority all concern private conspiracies. Just this term we held that whether class-based animus is required under section 1985(3) when state action is involved has never been decided. *See State of New Mexico v. Albuquerque*, 768 F.2d 1207, at 1209 (10th Cir.1985). It is therefore inappropriate for the court to decide this important and farreaching issue without some analysis of the class-based animus requirement and whether it reasonably applies to facts radically different from those which spawned the rule.

While it is true that section 1985(3) reaches a purely private conspiracy only when some racial or other class-based animus is shown, *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), a conspiracy to infringe first amendment rights is a violation of section 1985(3) without a showing of class-based animus when the state is involved. When the Su-

preme Court decided, in *Griffin*, that section 1985 would reach some private conspiracies, it fashioned the class-based animus requirement to prevent the statute from becoming a "federal remedy for 'all tortious conspiratorial interference with the rights of others.'" *Scott*, 103 S.Ct. at 3358 (quoting *Griffin*, 403 U.S. at 102, 91 S.Ct. at 1798). Application of this requirement to state-sponsored conspiracies would be too strict a reading of *Griffin* and of Congress' intent in enacting section 1985.

For deprivation of some rights protected by section 1985 to be actionable, state action must be shown. *Scott*, 103 S.Ct. at 3356–57 (conspiracy to violate first amendment rights is not a violation of section 1985 unless state is involved in the conspiracy); *Murphy v. Mount Carmel High School*, 543 F.2d 1189 (7th Cir.1976) (state action is required to prove conspiracy to violate rights protected by the fourteenth amendment). The rationale of these cases is that the first and fourteenth amendments require state action, and section 1985 provides no additional substantial rights. *Scott*, 103 S.Ct. at 3358. Where alleged violations of these rights are involved, the state action requirement itself prevents section 1985 from being a general federal tort law. The additional requirement of class-based animus, fashioned for private conspiracies, is therefore inappropriate.

Plaintiffs' first amendment freedom not to associate with certain political causes is a right protected by the fourteenth amendment. *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977). For infringement of that right to be actionable under section 1985(3), plaintiffs needed only to show state action. Since state action clearly was involved here, the district court erred in dismissing the section 1985 and 1986 claims.

The judgment of the district court should be affirmed in part and reversed in part and the case remanded for retrial of plaintiffs' claims against the individual defendants.