**Randy C. NEES, Plaintiff-Appellee,**

v.

**Robert BISHOP, Defendant-Appellant.**

**No. 81–2350.**

United States Court of Appeals, Tenth Circuit.

March 23, 1984.

Randy C. Nees, pro se.

Robert N. Miller, U.S. Atty., and Nancy E. Rice, Asst. U.S. Atty., Denver, Colo., for defendant-appellant.

Before HOLLOWAY, McWILLIAMS and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.

Defendant Robert Bishop timely appeals a money judgment entered against him on a *Bivens* civil rights claim. Bishop argues that the district judge erred in finding and concluding that he caused the violation of the Sixth Amendment rights of plaintiff-appellee Randy Nees; that Bishop was not entitled to protection against the claim by qualified immunity; and that damages should be awarded against Bishop in the amount of $1,000.00 plus $301.00 in costs. *Nees v. Bishop*, 524 F.Supp. 1310 (D.Colo. 1981).

I

Nees, an inmate of the Colorado State Penitentiary, brought suit against Bishop, a Special Agent of the Federal Bureau of Investigation, and five other defendants, alleging violation of his Sixth Amendment right to counsel.[1] The suit was brought under 42 U.S.C. § 1983 but as to Bishop the court determined that the cause would be construed as a *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), suit for monetary damages under 28 U.S.C. § 1331. *Nees*, 524 F.Supp. at 1311. Nees alleged that his constitutional right to counsel was violated by denying him the right to see counsel during critical stages of both a state and federal investigation, such denial occurring between the evening of March 30, 1976, and the afternoon of April 1, 1976, when he was in custody. I R. 124. Specifically Nees points to the posting of the following note to carry out directions from Bishop to local officers:

> Nees is to be kept alone (Sheriff's Orders). He has no bond and he *is not* to be seen by the Public Defender. Bishop says that he has to have his own private attorney.

I R. 38. Nees also challenges the subsequent refusal to allow David L. West, the Deputy State Public Defender, to see him at 6:10 p.m. on March 31 and at 2:30 p.m. on April 1; Nees had asked during the morning of March 31 to see an attorney and was told he could not see the Public Defender, on orders of the Sheriff. Nees says these actions violated his Sixth Amendment right to counsel.

Bishop says that he did not give instructions for the note to be written or write it himself, but he had merely discussed differences between the state and federal public defender systems with the state officers, and that in any event, at no time during the sequence of events complained of did Nees's Sixth Amendment right to counsel attach; that there was no denial of counsel sufficient to amount to a derogation of plaintiff's Sixth Amendment rights; that Bishop is protected by a qualified immunity; and that Nees suffered no injury entitling him to damages.

The district judge made both oral and written findings. Her written findings state in part that

> plaintiff was arrested on a federal charge and jailed in the La Plata County Jail in Durango, Colorado, on the evening of March 30, 1976. He was not permit-

---

**1.** Nees also sued Ron Overholtzer, police officer, Chris Wiggins, police officer, Gary McKnight, police officer, Jim Childress, district attorney, Denny Schilthuis, sheriff, Charles Kalbacher, undersheriff, Harry Gorman, jail commander, and Mark Prouty, jailer. I R. 1–2. Jim Childress was dismissed by order of the district court on June 15, 1977. I R. 13. Nees's motion to dismiss Ron Overholtzer and Gary McKnight was granted on August 12, 1977. I R. 21. The district court entered judgment against Denny Schilthuis in the amount of $1,000.00 plus $301.30 in costs and against Mark Prouty in the amount of $100.00. Judgment was entered for Charles Kalbacher and against Nees for the dismissal with prejudice with each party to pay his own costs. The complaint and cause of action were dismissed with prejudice as to Chris Wiggins and Harry Gorman on oral motion of Nees with each party to pay his own costs. I R. 214–15.

ted to see an attorney until approximately 4:30 p.m. on April 1, 1976. Early on the morning of March 31, he specifically asked one of the jailors, Deputy Sheriff Harry J. Gorman, if he could see an attorney, and was told that he could not see the public defender on orders of the Sheriff. On at least two occasions, state public defender David L. West attempted to see plaintiff, but was refused. He was shown a note posted at the jail which stated: "Nees is to be kept alone (Sheriff's Orders). He has no bond and he *is not* to be seen by the Public Defender. Bishop says that he has to have his own private attorney."

*Nees*, 524 F.Supp. at 1311. The trial judge found credible the testimony of Sheriff Schilthius that "Agent Bishop told him on the night of plaintiff's arrest that the public defender was not to see plaintiff ... Schilthuis passed this information to Prouty who wrote and posted the note described above." *Id.* at 1312.

From these findings the trial judge concluded:

> The evidence of the note, the turning away of the public defender, the failure to provide plaintiff with an attorney despite his request, and the incarceration of plaintiff for almost two days without permitting him to see an attorney, was sufficient to establish that the plaintiff was denied his constitutionally guaranteed right to counsel under the Sixth Amendment of the United States Constitution.

*Id.*

After finding a constitutional violation, the trial judge considered the question of the appropriate measure of damages and assessed damages against Bishop in the amount of $1,000 plus $301.30 in costs. I R. 214–15.

## II

There was evidence as follows on the issues raised:

On March 30, 1976, at about 6:55 p.m., Randy Nees was at the Ramada Inn in Durango, Colorado. He was approached by Chris Wiggins of the Durango Police Department and asked to step outside. Wiggins introduced Nees to Robert Bishop and because it was cold they got into a police car. At 7:05 p.m. Nees was given an "Interrogation; Advice of Rights" form. Nees stated, "Maybe I should have a lawyer." Bishop told him, "If you want an attorney, we will stop right now and we will get you one." Nees replied, "Well, I am not in any trouble. I don't need one. Let's go ahead." II R. 237, III R. 376.

The form signed at 7:22 p.m. stated that Nees waived his right to "a lawyer at this time." VIII R. Ex. C. At 7:31 p.m. Nees also signed a consent to a search of a 1973 GMC pickup. VIII R. Exs. D and A. After finding money in Nees's pickup, Nees was placed under arrest by Bishop. At 8:05 p.m. Nees signed a consent to a blood alcohol test. Nees was booked into the La Plata County Jail in Durango at 8:15 p.m. on March 30.

Bishop then obtained verbal authorization from the United States Attorney in Denver to charge Nees with extortion under the Hobbs Act. III R. 327, 346. At 9:21 p.m. Nees signed a second "Interrogation; Advice of Rights" form waiving his right to "a lawyer at this time." VIII R. Ex. B. Nees did not then ask to see an attorney. At 10:20 p.m. Nees signed a permission to search Room 21 at the Silver Spruce Motel located in Durango. VIII R. Ex. CC. After three items were found in Nees's room at about 11 p.m., Nees became a suspect in state criminal activities, and the state officers then began to focus their own investigation on Nees. II R. 244–45, III R. 251. Bishop was with the policemen when they seized these items, and Bishop was told they might relate to a state-level case. III R. 352–53.

Sometime between 8:45 p.m. and 11:30 p.m. on March 30 the note quoted above was posted at the jail. II R. 211. Bishop testified that he first learned about the note at a motions hearing in United States District Court on May 21, 1976. He said the note surprised him because he saw his name on it and because he had no knowl-

edge of the contents. III R. 395. Bishop testified, "I didn't authorize anyone to write that note, nor did I write it." *Id.* Bishop told about informal social gatherings where law enforcement officers, including members of the La Plata County Sheriff's Department, discussed differences between the state and federal public defender systems. Bishop said that he expressed his opinion that a defendant before he obtains free legal service should make a showing of indigency as was required in the federal system. Bishop said that he never imposed his opinion upon the jails with which he was working. *Id.* at 395–405.

Jail commander Harry Gorman testified that during the morning of March 31 Nees asked Gorman if he could see an attorney and Gorman told Nees that there was an order from the Sheriff that Nees could not see the Public Defender. Later Gorman testified that Nees did not ask to see the Public Defender; Gorman simply told him he could not see the Public Defender. As the district judge found, the nearest federal public defender was 340 miles away in Denver. *Nees*, 524 F.Supp. at 1313.

During the day Wiggins obtained two search warrants from a state judge to look for money from a federal extortion. At 5:37 p.m. on March 31 Wiggins told Nees that he was going to present evidence to the District Attorney the following day regarding Nees's involvement in some armed robberies. II R. 252. At that time Nees was arrested in the jail for armed robbery under state law and readvised of his rights and was as of that time being held also on those state charges. III R. 259, 300.

Wiggins testified that Nees did not ask him if he could see the public defender or an attorney. III R. 296. However, at 6:10 p.m. on March 31 the State Public Defender, David West, attempted to see Nees. Mark Prouty, the jailer on duty, refused to let West see Nees because of the note. II R. 178, I R. 38. West made a copy of the note. II R. 202. On March 31 Bishop had a complaint prepared against Nees. III R. 393.

On the morning of April 1 Nees was taken by Bishop to Cortez for an initial appearance before a U.S. Magistrate. Nees was advised of his rights. At the initial appearance Nees did not request an attorney. III R. 428, 495. *But see* VI R. 29–30. At 2:30 p.m. Public Defender West again asked to see Nees and was told by Gorman that he could not. I R. 38, II R. 85. About midafternoon Undersheriff Charles Kalbacher contacted West to ask him to represent Nees at a lineup. II R. 229. West talked with Nees shortly before the lineup and appeared with him at the lineup. I R. 38, 125.

On April 2 Undersheriff Kalbacher filed charges against Nees with the State District Attorney's Office and then in the District Court in La Plata County. At 9:15 a.m. that day Nees was taken to the District Court in Durango for an appearance on state armed robbery charges. Public Defender West was with Nees in court.

At about 2 a.m. on April 3 Nees was checked into the Denver County Jail. On Monday, April 5 Nees saw a U.S. Magistrate who discussed Nees's rights with him and told him that he would make arrangements for a federal public defender to represent him. Public Defender Sears was appointed to represent Nees. VI R. 29.

## III

We are not persuaded that any of the findings of fact of the district judge are clearly erroneous. Rule 52(a), Fed.R.Civ.P. Therefore we accept them and focus on the legal question presented: Was Nees denied his Sixth Amendment right to have the assistance of counsel for his defense while he was being held in custody for violation of state law?

The Sixth Amendment to the United States Constitution provides in part:

> In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.

In *Kirby v. Illinois*, 406 U.S. 682, 684, 92 S.Ct. 1877, 1879, 32 L.Ed.2d 411 (1972), the Supreme Court was asked to extend the

*Wade-Gilbert per se* exclusionary rule to identification testimony based upon a police station showup that took place *before* the defendant had been indicted or otherwise formally charged with any criminal offense. The plurality opinion said that the *Wade-Gilbert* exclusionary rule stems from the constitutional guarantee of the right to counsel contained in the Sixth and Fourteenth Amendments. *Id.* at 688, 92 S.Ct. at 1881. Referring to a line of constitutional cases stemming back to the Court's landmark opinion in *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), the plurality opinion stated:

> it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him. See *Powell v. Alabama, supra; Johnson v. Zerbst,* 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461]; *Hamilton v. Alabama,* 368 U.S. 52 [82 S.Ct. 157, 7 L.Ed.2d 114]; *Gideon v. Wainwright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799]; *White v. Maryland,* 373 U.S. 59 [83 S.Ct. 1050, 10 L.Ed.2d 193]; *Massiah v. United States,* 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246]; *United States v. Wade,* 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149]; *Gilbert v. California,* 388 U.S. 263 [87 S.Ct. 1951, 18 L.Ed.2d 1178]; *Coleman v. Alabama,* 399 U.S. 1 [90 S.Ct. 1999, 26 L.Ed.2d 387].

This is not to say that a defendant in a criminal case has a constitutional right to counsel only at the trial itself. The *Powell* case makes clear that the right attaches at the time of arraignment, and the Court has recently held that it exists also at the time of a preliminary hearing. *Coleman v. Alabama, supra.* But the point is that, while members of the Court have differed as to existence of the right to counsel in the contexts of some of the above cases, *all* of those cases have involved points of time at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment,

information, or arraignment. (footnote omitted).

*Id.* 406 U.S. at 688, 689, 92 S.Ct. at 1881, 1882. *See Brewer v. Williams,* 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977). In *Brewer* the Court stated:

> Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—"whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois, supra* [406 U.S.,] at 689 [92 S.Ct. at 1882]. See *Powell v. Alabama, supra; Johnson v. Zerbst,* 304 U.S. 458 [58 S.Ct. 1019, 82 L.Ed. 1461]; *Hamilton v. Alabama,* 368 U.S. 52 [82 S.Ct. 157, 7 L.Ed.2d 114]; *Gideon v. Wainwright, supra; White v. Maryland,* 373 U.S. 59 [83 S.Ct. 1050, 10 L.Ed.2d 193]; *Massiah v. United States,* 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246]; *United States v. Wade,* 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149]; *Gilbert v. California,* 388 U.S. 263 [87 S.Ct. 1951, 18 L.Ed.2d 1178]; *Coleman v. Alabama, supra.*

*Id.,* at 398–99, 97 S.Ct. at 1239.

In *Kirby* the Court declined to impose a *per se* exclusionary rule upon testimony concerning an identification that took place long before the commencement of any prosecution whatever. *Kirby,* 406 U.S. at 690, 92 S.Ct. at 1882. The plurality opinion in *Kirby* also stated that "[t]he only seeming deviation from this long line of constitutional decisions [the cases above cited in *Kirby* recognizing the right to the assistance of counsel at or after the initiation of adversary judicial proceedings] was *Escobedo v. Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]." *Id.* at 689, 92 S.Ct. at 1882. In the instant case the district judge found that

> [t]his is not an *Escobedo* case. This is not a case where somebody is being held and a confession is beat out of him or pulled out of him. This is not even a

case where someone is being held for the purpose of trying to interrogate him.

V R. 2. We agree. Nees is not seeking "to guarantee full effectuation of the privilege against self-incrimination . . ." *Johnson v. New Jersey*, 384 U.S. 719, 729, 86 S.Ct. 1772, 1779, 16 L.Ed.2d 882 (1966).

In *United States v. Ash*, 413 U.S. 300, 301, 93 S.Ct. 2568, 2569, 37 L.Ed.2d 619 (1973), the Court considered the issue "whether the Sixth Amendment grants an accused the right to have counsel present whenever the Government conducts a post-indictment photographic display, containing a picture of the accused, for the purpose of allowing a witness to attempt an identification of the offender." (footnote omitted). As stated by Justice Stewart in his concurring opinion,

> [s]ince the photographic identification in the present case occurred after the accused had been indicted, and thus clearly after adversary judicial proceedings had been initiated, the only question is whether the procedure was such a "critical stage" that the Constitution required the presence of counsel.

*Id.* at 322, 93 S.Ct. at 2580. A pretrial event constitutes a "critical stage" when the accused requires aid in coping with legal problems. The Court held that the right to counsel did not then exist because the defendant was not present at the time of the display and therefore could not be misled by his lack of familiarity with the law or overpowered by his professional adversary. *Id.* at 306–21, 93 S.Ct. at 2572–79. Thus in *Ash* there had been initiation of criminal proceedings, but the requirement of a "critical stage" necessitating the presence of counsel also had to be met and was not satisfied there.

To determine, then, if Nees's Sixth Amendment right to counsel was violated we must consider (1) when adversary judicial proceedings were initiated against Nees, and (2) after such proceedings were initiated against Nees, whether Nees was denied the presence of counsel at a "critical stage." Because Nees specifically limited his complaints of violation of his Sixth Amendment right to counsel to the conduct in connection with his two state criminal proceedings,[2] we consider only whether Nees was denied his right to counsel as to those state charges and not as to the federal charge.

We share the trial court's concern about the "inconceivable and unreasonable" instructions given by Agent Bishop and the incarceration of Nees for almost two days without his being permitted to see the state

---

**2.** During the testimony of Nees the following discussion occurred which shows that Nees is complaining of violation of his Sixth Amendment rights only in connection with charges against him under state law:

> Q  Surely.
> A  And I feel like had there been a lawyer there, at least they wouldn't have been operating totally unsupervised.  I am referring strictly at this time to the State cases.
> Q  That's what I wanted to clarify.
> A  And I feel like there is no way to say that it would have made a difference, but I feel it would have, because I feel like there were improprieties.  They took improper actions during the investigation, and they used this period of time to cover up those improprieties so that they could convict me of those robberies.
> Q  *Well, you are not challenging your Federal extortion conviction on that same ground, though.*
> A  *No.  My Federal extortion conviction is completely gone.*
> III R. 534.

> Q  I am asking you how do you feel you were wronged by the refusal to allow you to have a Public Defender—State Public Defender.
> A  I feel I was wronged in that I was denied the aid of legal counsel during the most critical times of criminal investigation.
> Q  You've got several cases, so I want to get specific here.  Denied regarding the Federal case?
> A  *The Federal case is not involved in this at all.  The two State robbery charges I was ultimately convicted of are.*
> III R. 542.
> Q  *But your complaints are limited to the two State criminal trials?*
> A  *Basically the results that came out of those, yes.  That is what I am limited to.*
> *Id.* at 542–43. (emphasis added).

Because Nees specifically limited his complaints of violation of his Sixth Amendment right to counsel to the conduct in connection with his two state criminal charges, we consider only whether Nees was denied his right to counsel in connection with the state criminal proceedings.

public defender.[3]  Moreover, the statement of Justice Marshall in his concurring opinion in *Geders v. United States*, 425 U.S. 80, 93, 96 S.Ct. 1330, 1337, 47 L.Ed.2d 592 (1976), in which Justice Brennan joined, that

> [t]he Court holds that the fear of unethical conduct is not a sufficient ground for an order barring overnight communication between a defendant and his attorney, and the same would hold true absent the most unusual circumstances, I take it, for an order barring consultation between a defendant and his attorney at *any* time before or during the trial (emphasis in original) (footnote omitted)

*id.* at p. 93, 96 S.Ct. at p. 1337, lends support to the position of Nees. However, we note that in *Geders* the Court found a violation of petitioner's right to the assistance of counsel guaranteed by the Sixth Amendment when the petitioner was prevented from consulting his counsel during an overnight recess in his *trial.  Id.* at 91, 96 S.Ct. at 1336.

On analysis of the decided cases, we conclude that there was no violation of Nees's Sixth Amendment right to have the assistance of counsel.  "Since *Massiah*, it has been settled that the sixth amendment right to counsel attaches no later than indictment, and that statements deliberately elicited by the government in the absence of counsel are thereafter inadmissible." *United States v. Muzychka*, 725 F.2d 1061, 1065–1066 (3d Cir.1984).  Here, however, there was no interrogation, as in *Escobedo* (where the interrogation occurred before the initiation of judicial proceedings), nor any special need of aid to cope with legal problems at a critical stage, and there had been no initiation of adversary judicial criminal proceedings—"whether by way of formal charge, preliminary hearing, indictment, information or arraignment." [4] *Brewer*, 430 U.S. at 398–99, 97 S.Ct. at 1239, quoting *Kirby*, 406 U.S. at 689, 92

**3.** The trial judge noted Colorado statutes which granted the right to see an attorney and prohibited state officers from interfering with that right.  Section 16-3-403, C.R.S.1973, provides:

> *Right to consult with attorney.*  Any person committed, imprisoned, or arrested for any cause, whether or not such person is charged with an offense, shall be allowed to consult with an attorney-at-law of this state whom such person desires to see or consult, alone and in private at the place of custody, as many times and for such period each time as is reasonable.  Except where extradition proceedings have been completed or are not required by law, when any such person is about to be moved beyond the limits of this state, the person to be moved shall be entitled to a reasonable delay for the purpose of obtaining counsel and of availing himself of the laws of this state for the security of personal liberty.

Section 16-3-404, C.R.S.1973, provides:

> *Duty of officers to admit attorney.*  (1) All peace officers or persons having in custody any person committed, imprisoned, or arrested for any alleged cause shall forthwith admit any attorney-at-law in this state, upon the demand of the prisoner or of a friend, relative, spouse, or attorney of the prisoner, to see and consult the person so imprisoned, alone and in private, at the jail or other place of custody, if such person so imprisoned expressly consents to see or to consult with the attorney.
> (2) Any peace officer or person violating the duty imposed by this section or section 16-3-403 shall forfeit and pay not less than one

hundred dollars nor more than one thousand dollars to the person imprisoned or to his attorney for the benefit of the person imprisoned, to be recovered in any court of competent jurisdiction.

With respect to these state statutes, the district judge stated that she "... did not make a finding, and does not in this opinion find that defendant violated the statute and, therefore, should be fined thereunder.  However, the statute did serve as a touchstone for the Court in determining an appropriate measure of damages for the constitutional violation." (footnote omitted).  *Nees*, 524 F.Supp. at 1312.

**4.** As noted, police officer Wiggins testified that on March 31 at 5:37 p.m. he "arrested" or "re-arrested" Nees at the jail on state armed robbery charges while Nees was in jail after arrest by Special Agent Bishop, and Wiggins re-advised Nees of his rights then.  III R. 259, 292, 303.  Nevertheless, formal state charges were not filed against Nees until April 2, I R. 125, and we treat the commencement of state adversary proceedings as occurring at that time.

This case is therefore unlike *Via v. Cliff*, 470 F.2d 271 (3d Cir.1972), where there was a claim of a Sixth Amendment violation by interruption of a defendant's consultation with counsel while defendant was in custody.  The alleged interference was before trial but apparently after the commencement of the adversary criminal proceedings.

S.Ct. at 1882. For these reasons, the right to counsel had not attached at the time Nees's request was made to see an attorney and denied. Nor had the right attached when the two requests of the state public defender to see Nees were denied. The right to counsel is not triggered by arrest alone. *Muzychka, supra,* 725 F.2d at 1068. Nees was represented by counsel at the state line-up on April 1, I R. 38, 125, and at the time the state adversary judicial proceedings were initiated against him. Nees was not denied the presence of counsel at any "critical stage" when the aid of counsel was needed. Therefore Agent Bishop's instructions, although clearly improper, did not cause the violation of Nees's Sixth Amendment right to counsel. While there might well be a violation of the constitutional right of access to the courts by refusal of contact with an attorney, *see e.g., Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979); *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977), here there was no claim or showing of a denial of access to the courts. .

In view of our conclusions we need not discuss Bishop's other contentions. Accordingly, the judgment must be reversed.