Linda K. KRISKO

v.

Leroy OSWALD, Frederick Conjour and the Township of Whitehall.

Civ. A. No. 85–4821.

United States District Court,
E.D. Pennsylvania.

Jan. 14, 1987.

B. Ryland Wiggs, Bethlehem, Pa., Samuel A. Scott, Allentown, Pa., for plaintiff.

Thomas A. Wallitsch, Allentown, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, Senior District Judge.

This case presents several interesting and novel issues with respect to rights secured to individuals by the Constitution and the identification of municipal policies and policy-makers for purposes of liability for civil rights violations.

Briefly stated, the case arises from an incident that took place in Whitehall Township, Lehigh County, late in the evening of October 8, 1983. Without attempting to detail the differing versions of the incident offered by each side, it is possible to extract a reasonably accurate account of the events which gave rise to the controversy.

Officer Leroy Oswald stopped a car driven by Gregory Goodwin after he observed the disregard of a red light. Plaintiff Linda Krisko was the owner of and a passenger in the car. She jumped out of the car, approached Officer Oswald and informed him that Goodwin was taking her to a hospital because she was suffering from an allergic reaction to food she had ingested at a nearby movie theater. Officer Oswald refused to let the car or any of its occupants leave the scene and continue to the hospital. At some point, either immediately upon being informed of the plaintiff's illness or after she allegedly collapsed as a result of it, Officer Oswald called an ambulance. Krisko was then taken to the hospital and treated. In the interval between the stop and the arrival of the ambulance, Oswald asked for and was given plaintiff's driver's license and the keys to her car.

Several days later, Krisko arranged to meet with Whitehall Township Police Chief Frederick Conjour to discuss the incident. Krisko was accompanied by her parents. The Kriskos were dissatisfied with Oswald's handling of the situation and wanted to make their concerns known to Chief Conjour. During the meeting, Krisko's mother became very upset and was either asked to leave the office by Conjour or was literally thrown out of the office. While Conjour was escorting her parents from the office, Krisko attempted to use the telephone on his desk. When Conjour returned to the office and found Krisko using his telephone, he allegedly became enraged and snatched it from her hand before evicting her from the office.

As a result of these incidents, Krisko brought this action, alleging violations of 42 U.S.C. § 1983 by virtue of defendants' abridging rights secured to her by the Second, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution. Plaintiff has also asserted various pendent state law claims.

Defendants have moved for summary judgment as to several claims. Specifically, defendants first contend that they are entitled to judgment on the Second Amendment, Fourth Amendment, Sixth Amendment, and Eighth Amendment claims. Defendants also contend that the claim for punitive damages against Whitehall Township must fail as a matter of law and that Whitehall Township cannot be held liable for the actions of defendants Oswald and Conjour. Finally, defendants further contend that Krisko has failed to establish violations of the equal protection and due process clauses of the Fifth and Fourteenth Amendments. We will consider these contentions seriatim.

## I. *Second Amendment*

■ Krisko's Second Amendment claim is admittedly a novel one. The Second Amendment to the Constitution provides as follows:

A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed.

Krisko construes this provision as entitling her to the services of a well-regulated militia. Further, she contends that the Whitehall Township police force is a "militia" that is not "well-regulated".

■ We decline to recognize the expansion of the Second Amendment in the manner for which the plaintiff contends. In the first instance, it is doubtful whether a police force can be termed a "militia". Second, and more important, the Second Amendment does not secure the right to a well-regulated militia in the sense that an individual is entitled to assert a claim that a state's militia is not "well-regulated". Rather, the Second Amendment secures to the several states the right to establish and

equip a militia. *Stevens v. United States*, 440 F.2d 144 (6th Cir.1971). Finally, the Second Amendment has consistently been held to constitute a limitation upon the power of the federal government vis-a-vis the states, not a limitation upon the states vis-a-vis their own citizens. *Eckert v. City of Philadelphia*, 329 F.Supp. 845 (E.D.Pa. 1971).

For the reasons stated, we will grant defendants' motion for summary judgment as to plaintiff's Second Amendment claims.

## II. *Fourth Amendment*

Defendants claim that there was no violation of plaintiff's Fourth Amendment rights to be free of unreasonable search and seizure in that plaintiff voluntarily relinquished her driver's license and car keys upon the request of Officer Oswald. Moreover, defendants also contend that even if the Court should conclude that plaintiff's property was seized, there was no meaningful interference with her possessory interest in that property.

■ While it is true that plaintiff alleges that she relinquished her driver's license upon Oswald's order, not his request (Complaint, ¶ 20), and she also alleges that Oswald "forced" her to give him her car keys and physically prevented her from taking her car from the scene of the alleged traffic violation, we cannot conclude that these actions constitute a violation of the Fourth Amendment under the circumstances of this case.

As to the driver's license, there is no dispute that it was returned to Krisko after Oswald examined it. Thus, there was no meaningful interference with her possessory interest in it. Moreover, there is no claim by Krisko for the initial stop of the vehicle. She admits that Goodwin, driving her car, disregarded a red traffic light at her instruction. (Deposition of Linda Krisko at 15). It is not unreasonable for the officer investigating a traffic violation to examine the driver's license of the acknowledged owner of the vehicle.

With respect to the car and car keys, we also conclude that the officer's actions

were reasonable under the circumstances insofar as the Fourth Amendment is concerned. The deposition testimony establishes that when Krisko became ill at a movie theater, her friends did not consider her capable of driving to the hospital. (Deposition of Patricia Beam at 73). In addition, Krisko testified that her symptoms were worsening. (Deposition of Linda Krisko at 20). Her father, Patricia Beam and Krisko herself testified that she tended to get excited during allergy attacks and was distressed by the time she attempted to drive herself to the hospital. (Deposition of John Krisko at 45, 46; deposition of Patricia Beam at 83, 84; deposition of Linda Krisko at 31). Thus, it was not unreasonable for Officer Oswald to prevent her from driving away in order to prevent injury to herself or others, even though she was temporarily deprived of the use of her car as a result. Consequently, defendants are entitled to summary judgment as to the Fourth Amendment claim.

### III. Sixth Amendment

■ It is undisputed that plaintiff in this case was never officially taken into custody, nor were judicial proceedings ever commenced against her. While she has alleged that her temporary detention by defendant Oswald amounted to false arrest and/or false imprisonment, the lack of official arrest precludes her claim for denial of counsel under the Sixth Amendment, since that right attaches only at the time or after adversary judicial proceedings have been initiated. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Nees v. Bishop,* 730 F.2d 606 (10th Cir.1984). Therefore, as to the Sixth Amendment claims, defendants' motion for summary judgment will be granted.

### IV. Eighth Amendment

■ Plaintiff's claims under the Eighth Amendment must likewise fail since those protections attach only after arrest and conviction. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). That

does not mean, however, that Krisko did not suffer a constitutional deprivation by allegedly having been prevented from seeking necessary medical care. Pre-trial detainees have been accorded a cause of action under the Fourteenth Amendment for the infliction of any punishment whatsoever in that prior to conviction such arrestees are presumed innocent. *Id.* Certainly one who was never charged with a crime is entitled to at least as much protection as persons awaiting trial.

Thus, while the plaintiff is not permitted to assert an Eighth Amendment claim, her allegations of punishment state a claim under the Fourteenth Amendment whether or not it could be termed "cruel or unusual" and without the need to prove deliberate indifference to serious medical needs in the context of the denial of medical care.

### V. Fourteenth Amendment

■ Under the Fourteenth Amendment,[1] plaintiff has asserted claims for violation of the equal protection claims as well as the due process claims. As to the former claims, defendants are correct that plaintiff has failed to make any allegations of class-based discrimination and for that reason her equal protection claims are not viable. As to the due process claims, however, defendants are not entitled to summary judgment.

We note first that all of defendants' arguments are directed toward demonstrating the reasonableness of defendant Oswald's conduct. No mention has been made of any basis upon which summary judgment may be granted to defendant Conjour for his actions taken in a meeting with plaintiff Krisko several days after the traffic-light incident.

■ Second, defendants concede that the Fourteenth Amendment protects citizens against the arbitrary deprivation of their liberty. They argue here that Oswald's actions were reasonable under the circumstances and/or that there was a compelling

---

**1.** Plaintiff has also plead, in the alternative, violations of the Fifth Amendment by the defendants. Since there is no question that defendants are state, not federal, officials, it is obvious that there can be no Fifth Amendment violations in this case.

state interest which justifies his actions. While we have already agreed that it was not unreasonable to prevent Krisko from driving herself from the scene, that is not dispositive of her claims that Oswald failed to allow her to seek necessary medical care. Even if we agree that it was reasonable as a matter of law to summon an ambulance rather than transport or accompany her to the hospital, there are material issues of fact with respect to how much time elapsed between the stop and the call for an ambulance. Whether the time involved was reasonable under the circumstances, amounted to "punishment" or was otherwise an infringement of Krisko's Fourteenth Amendment liberty interest in that she was denied timely medical care, are questions inappropriate for resolution on a motion for summary judgment.

### VI. *Municipal Liability Issues*

■ We turn next to questions involving the liability of Whitehall Township and the propriety of asserting a claim for punitive damages against the municipality. As to the latter issue, plaintiff concedes that the accepted rule forbids the assessment of punitive damages against a municipality. She argues that the rule is wrong and should not be applied here. Quite clearly, binding precedent precludes a claim for punitive damages against Whitehall Township. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). This Court is not free to modify the rule.

As defendants recognize, the question of whether Whitehall Township may be held liable for the actions of defendants Oswald and Conjour depends upon whether they were acting in furtherance of an existing government policy or custom or whether they were designated policy makers for the township, with respect to the situation involved. *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

■ Where a municipality has delegated the power to establish final policy to a municipal official, that official's decisions represent municipal policy and can give rise to municipal liability, but only when the

official's decision can be termed "a deliberate choice to follow a course of action" and the course was "consciously chosen from among various alternatives". *Id.* at ——, 106 S.Ct. at 1300, 89 L.Ed.2d 465; *Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791, 804 (1985). Moreover, where the official has discretion to act, the exercise of that discretion, without more, cannot give rise to municipal liability. *Pembaur, supra.*

Defendants contend that, "Defendant Conjour is not authorized to issue any directive or promulgate any rules or regulations with respect to conduct of the officers in the field of duty". (Defendants' Brief in Support of Summary Judgment, Doc. # 8 at 12). Notwithstanding the latter assertion, defendants have produced a copy of General Order 81–9, which purports to be "Rules and Regulations Regarding Conduct and Performance of Duty". The Order was issued under the signature of Chief Conjour and bears the name of no other Whitehall Township official. (Exhibit B to Doc. # 8). Defendants offer no explanation as to why this does not represent the official policy of Whitehall Township with respect to its police department except to note that, "... the same *must* be approved by the Director of Public Safety". (Id., at 12; Emphasis in original). There is no indication as to whether the General Order was ever approved, disapproved or even reviewed by the Director of Public Safety. Even if it was never approved or reviewed, it is difficult to understand why that document does not represent the "official policy" of the township if there is no other guidance for police officers and if they actually follow the procedures set forth in General Order 81–9.

Whether or not the General Order represents official policy, however, the rules and regulations contained therein are very general, indeed, and provide no specific guidance for handling a situation such as that which confronted Officer Oswald on the night of October 8, 1983. Thus, considerable discretion was necessarily vested in the officer. Defendants are apparently contending that the exercise of that discretion

by Officer Oswald cannot bind the municipality.

As noted, the exercise of discretion, "without more", does not bind a municipality. The question is whether Chief Conjour did "more" than exercise his discretion. More specifically, assuming that Chief Conjour is a municipal policy-maker, does his subsequent review and alleged ratification of Officer Oswald's actions represent the kind of conscious, reasoned decision-making necessary to establish municipal policy?

■ We conclude that Conjour's *post hoc* approval of Oswald's conduct is not sufficient to render Whitehall Township liable for any constitutional violations which the officer may have committed. In *Chinchello v. Fenton,* et al., 805 F.2d 126, 133 (3d Cir.1986), the Court of Appeals reiterated that according to its interpretation of *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), supervisory public officials do not have, "an affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by ... subordinates".

Failure to properly train police officers is the basis of plaintiff's complaint against Whitehall Township. It follows that if a supervisory official, even one who may be considered a municipal policy-maker, cannot himself be liable for failure to train and/or discipline a subordinate, his failure to act cannot render the muni cipality liable for a constitutional violation. Consequently, we will grant summary judgment in favor of Whitehall Township as to liability as well as punitive damages.

In summary, we will grant defendants' motion for summary judgment with respect to the alleged violations of plaintiff's Second, Fourth, Sixth and Eighth Amendment rights, noting that the allegations which purport to support a claim for a violation of the Eighth Amendment may be tried as violations of due process rights under the Fourteenth Amendment. Defendants' motion for summary judgment with respect to the claims against Whitehall Township will also be granted. In all other respects, the motion for summary judgment will be denied.