**Trygve Bredo BAUGE, Plaintiff,**

v.

**Officers Paul JERNIGAN and Hugh Walker, Sergeant Harold Oaks, individually and in their official capacities, John Does, Lance Bell, United Airlines, and the City and County of Denver, Defendants.**

Civ. A. No. 87–K–764.

United States District Court,
D. Colorado.

Sept. 3, 1987.

Darold W. Killmer, Cohan, Greene & Killmer, Denver, Colo., for plaintiff.

Jonathan A. Cross, Halaby & McCrea, Denver, Colo., for Jernigan Walker, Oaks and City and County of Denver.

John Grund, Tilly & Graves, Denver, Colo., for United and Bell.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### Background

The facts of this case will intrigue those who fondly remember John Charles Nesbitt's Passing Parade as well as Alexis De Tocqueville, Jacques Barzun and other observers of the American scene. The story narrated by plaintiff's amended complaint lends a new dimension to the troubles of airline passengers in this age of deregulated, serendipitous departures. On May 23, 1986, Trygve Bauge arrived at Stapleton International Airport in Denver "to see his mother off on a flight to Norway." Amended Complaint, ¶ 13. He and his mother stepped up to the United Airlines ticket counter to tender his mother's ticket to the agent for check in. Faced with two people but only one ticket, the agent asked how many persons were travelling on the flight. Bauge replied that only his mother was departing. He, on the other hand, was "'only here to hijack the plane.'" *Id.*, ¶ 16.

The agent, who either did not discern that plaintiff was joking or if so, found it not amusing, called her supervisor, defendant Lance Bell. "Bell told Bauge that it is dangerous to make such 'jokes' in an airport. Bell implied that such jokes were impermissible." *Id.*, ¶ 17. In response, Bauge acclaimed "that this is a free country, and as a member of the Libertarian political party, he believed in his freedom of speech." *Id.*, ¶ 18. Bell, now "infuriated," *id.*, called the authorities.[1]

Plaintiff waited for the police to arrive. When they did so, he declined to answer their initial inquiries, asserting he was first entitled to a lawyer. Bauge demanded to be advised of his *Miranda* rights, even though at that time he could hardly be said to have been in custody. Plaintiff's intransigence "only aggravated the arresting officer, who finally angrily said to Bauge that he was going to detain and search him." *Id.*, ¶ 22.

Eventually, Bauge was arrested and handcuffed. As the procession wended through the concourse, the police "forcibly pushed him through the crowded terminal while loudly explaining to the crowd that Bauge was a hijacker." *Id.*, ¶ 24. Bauge's mother apparently stood by as these boisterous events unfolded, for at this point the amended complaint notes she asked Bell what was happening to her son. "Bell told her that he would only be asked a few questions and then released." *Id.*, ¶ 25. Quite sensibly she boarded her plane for Norway, "without calling a lawyer for her son," *Id.* Lacking her audience, the plaintiff remained behind to exercise his rights.

Following the arrest, Bauge was placed in a holding cell at the airport, "where he stayed, abandoned, for at least an hour." *Id.*, ¶ 26. During this time, he penned a list of grievances against the police. When the police removed Bauge from the cell, he presented them with "a legal notification he wanted to read to them." *Id.*, ¶ 27. After hearing this notification, the police allegedly confiscated Bauge's pencil and

---

1. At this point, one is reminded of Mark Twain's comment that civil rights consisted of "free speech, free press, and the good sense not to use either."

paper and did not return them for three days.

Bauge avers he was held in the Denver city and county jails for ten days. During this time, he claims he was physically threatened, medically deprived, intimidated, made the subject of a fabricated arrest report, and reported to the FBI and the Immigration and Naturalization Service. The amended complaint further recites the INS subsequently held Bauge for four days in a holding facility.

Bauge claims he was not advised of his *Miranda* rights until three hours after his initial arrest. He further claims that while imprisoned by the city defendants, he was not allowed "to call an attorney for a long period of time." Amended Complaint, ¶ 34. The INS, not a defendant in this case, also purportedly did not allow him to call an attorney. Finally, Bauge states the city defendants "confiscated his paper and pencil, even though they required that any request for medical attention be in writing." *Id.,* ¶ 34.

Predictably, this lawsuit ensued. Plaintiff's original *pro se* complaint was dismissed without prejudice because it was impossible to understand. Eventually, plaintiff retained an attorney, and an amended complaint was filed. This complaint was not much more understandable, but for different reasons. It purported to allege fourteen claims for relief: (1) unreasonable searches and seizures under the Fourth and Fourteenth Amendments and under Article II, section 7 of the Colorado Constitution; (2) deprivation of liberty and property without due process under the Fourth, Fifth, and Fourteenth Amendments and under Article II, section 25 of the Colorado Constitution; (3) deprivation of right to privacy under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments and under the common law and Constitution of Colorado; (4) deprivation of the right to free speech under the First and Fourteenth Amendments and under Article II, section 1 of the Colorado Constitution; (5) denial of counsel under the Sixth Amendment and under Article II, section 16 of the Colorado Constitution; (6) viola-

tion of 42 U.S.C. § 1985; (7) violation of 42 U.S.C. § 1986; (8) cruel and unusual punishment in violation of 42 U.S.C. § 1983, the Eighth Amendment, and Article II, section 20 of the Colorado Constitution; (9) assault; (10) battery; (11) false imprisonment and false arrest; (12) negligence; (13) malicious prosecution; and, of course, (14) outrageous conduct.

Lawyers call the production of such hyperbole "pleading." Leave has been granted for plaintiff to file a second amended complaint.

### Motions to Dismiss

By memorandum opinion and order of August 7, 1987, I granted in part and denied in part the motion of defendants Bell and United Airlines for a Rule 12(b)(6) dismissal of the complaint. Specifically, I dismissed the pendent state law claims without prejudice and struck those portions of plaintiff's first through five claims, inclusive, and eighth claim which alleged deprivation of rights created by state law. Otherwise, the motion was denied.

The case is before me again on the Rule 12(b)(6) motion of defendants Jernigan, Walker, Oaks, and City and County of Denver. The motion rests on several grounds. According to the headings of city defendants' brief, those grounds are as follows: (1) plaintiff's arrest comported with fourth amendment requirements, (2) plaintiff's fourteenth amendment due process rights were not denied, (3) plaintiff has failed to state a claim that his right to privacy was violated, (4) plaintiff did not have a first amendment right to speak words which in and of themselves violate the law, (5) plaintiff's sixth amendment rights were not denied by failing to provide him with an attorney, (6) the claims under 42 U.S.C. §§ 1985 and 1986 fail for lack of racially discriminatory animus, and (7) plaintiff's eighth amendment claim fails because he was never convicted of a crime.

### First, Second, and Fourth Claims

Proof of city defendants' contentions regarding plaintiff's first, second, and fourth claims must await factual develop-

ment of the record. Dismissal of those claims at this stage of the litigation would violate the directive of *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99; 101–2, 2 L.Ed.2d 80 (1957) (claims are not subject to dismissal under Rule 12(b)(6) unless it appears beyond doubt plaintiff can prove no set of facts in favor of those claims). Plaintiff's third, fifth, sixth and seventh, and eighth claims are, however, fatally deficient. Those claims are considered below.

### Eighth Claim

■ I begin with the eighth amendment claim, which coincidentally constitutes plaintiff's eighth claim for relief. This claim alleges that defendants' deliberate inattention to plaintiff's medical needs during his post-arrest incarceration "constituted unnecessary and wanton infliction of pain prohibited by the Eighth Amendment." Amended Complaint, ¶ 59. In advocating dismissal of this claim, city defendants argue:

> The protection of the "Eighth Amendment does not apply until after an adjudication of guilt." *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir. 1985). Because the criminal charges against Bauge were dismissed, Complaint ¶ 36, the invocation of the Eighth Amendment, in plaintiff's eighth claim for relief, does not apply.

Brief of City Defendants, at 8.

In response, plaintiff asserts the eighth claim for relief "is a violation of the fourteenth amendment's due process clause, not a violation of the eighth amendment." Response Brief at 3, citing *Garcia*. Plaintiff continues: "The second amended complaint will reflect this principle. The facts alleged in the complaint are sufficient to state a claim for this due process violation." Response Brief at 3.

In *Garcia*, the Tenth Circuit noted deliberate indifference to the serious medical needs of a pretrial detainee is prohibited by the due process clause of the fourteenth amendment, but not by the eighth amendment. *Id.* at 307. Despite plaintiff's characterization of how the eighth claim should be pleaded, that claim as currently drafted

is brought solely under the eighth amendment. Therefore, it is dismissed.

### Third Claim

■ Plaintiff's third claim for relief seeks damages for the alleged deprivation of plaintiff's "right to privacy in violation of the first, fourth, fifth, ninth, and fourteenth amendments." There is no explicit guarantee of a right to privacy in the Constitution. The Supreme Court has therefore evinced restraint in demarcating the limited nature of this right. In describing the privacy right, the Court has stated:

> The cases sometimes characterized as protecting "privacy" have in fact involved at least two different kinds of interests. One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.

*Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–77, 51 L.Ed.2d 64 (1977). Neither type of interest is present here. The "decisional" privacy right attaches only to the small, select group of those rights adjudged to be fundamental or implicit in the concept of ordered liberty. *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976). This distinct category of rights includes marriage, procreation, contraception, abortion, family relationships, and child rearing and education. *Carey v. Population Services International*, 431 U.S. 678, 685, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977). It stops short of embracing, for example, any fundamental right to engage in sodomy. *Bowers v. Hardwick*, —— U.S. ——, 106 S.Ct. 2841, 92 L.Ed.2d 140, 92 L.Ed.2d 140 (1986). In *Bowers*, the Court called for "great resistance" to expansion of the limited category of rights deemed to be fundamental. *Id.*, —— U.S. at ——, 106 S.Ct. at 2846, 92 L.Ed.2d at 148.

Even under the *Conley v. Gibson* standard, plaintiff's complaint does not invoke any of the fundamental decisional privacy rights identified by the Supreme Court. According to the complaint, plaintiff was illegally arrested at the airport for joking

that he was a hijacker. The complaint avers, *inter alia*, he was then jailed for ten days, physically mistreated, threatened, deprived of his right to an attorney, and assertedly not properly advised of his *Miranda* rights. Nothing in the allegations even remotely bears on the select category of decisional privacy rights carefully and cautiously enumerated by the Supreme Court.

Similarly, nothing in plaintiff's complaint relates to the disclosure of personal matters falling within his legitimate expectation of confidentiality. Paragraph 44 of the amended complaint merely states defendants' conduct "constituted an unwarranted intrusion into affairs which Trygve Bauge was entitled to keep private, in violation of his right to be free from invasion of his privacy." The complaint does not even hint at the nature of those private affairs. *Compare, e.g., Slayton v. Willingham*, 726 F.2d 631, 635 (10th Cir.1984) (allegation that defendants exhibited highly sensitive, personal, and private photographs of plaintiff sufficed to state a claim for violation of plaintiff's constitutional right to privacy, since that right encompasses avoidance of disclosure of personal matters). It is one thing to say goodbye to one's mother, a matter in which privacy is implicit. It is quite another to advise an airline employee that one intends to hijack a plane. The third claim for relief is nothing more than a vague repetition of claims stated elsewhere in the complaint. It, too, is dismissed.

### Sixth and Seventh Claims

This brings me to a consideration of that part of the motion which requests dismissal of the sixth and seventh claims for relief. These claims are brought under 42 U.S.C. §§ 1985 and 1986, respectively. As stated in the order of August 7, 1987, and as conceded by plaintiff, Response Brief at 7, the existence of the § 1986 claim is dependent on the survival of the § 1985 claim. *See Brown v. Reardon*, 770 F.2d

896, 905 (10th Cir.1985). The § 1986 claim will rise and fall with the § 1985 claim.

The § 1985 claim does not specify the particular subsection of that statute which supports its allegations. Paragraph 54 of the amended complaint, however, describes a conspiracy to deprive plaintiff "of equal protection of the laws and equal privileges and immunities under the laws." This phrase tracks the statutory language of § 1985(3). Based on this factor, as well as the general inapplicability of subsections (1) and (2) on their face, I am forced to assume that plaintiff's sixth claim for relief is raised under § 1985(3).

In opposing that part of the airline defendants' motion which sought dismissal of the sixth and seventh claims, plaintiff alleged the requisite discriminatory animus in averring that he is a Norwegian alien and a libertarian. I observed these allegations "may not survive a directed verdict, or even a motion for summary judgment," Order of August 7, 1987 at 3, but found dismissal to be premature under the standard espoused by *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–2, 2 L.Ed.2d 80 (1957).

Further consideration of this portion of the August 7, 1987 order reveals the sixth and seventh claims should have been dismissed. In *Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1176 (10th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984), the Tenth Circuit construed *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) to "signal that the classes covered by § 1985 should not be extended beyond those already expressly provided by the Court." The *Wilhelm* court therefore concluded "that a class of 'handicapped persons' was not in the contemplation of Congress in 1871, and was not included as a class in what is now § 1985(3)." *Id.* at 1177. Following *Wilhelm* as I must, I cannot and will not expand the number of groups protected by § 1985(3) to include Norwegians.[2] *See*

---

**2.** In so stating, I am aware of the recent cases of *Saint Francis College v. Al-Khazraji*, —— U.S. ——, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987) and

*Shaare Tefila Congregation v. Cobb*, —— U.S. ——, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987). Neither party has discussed the potential impact

*United Brotherhood,* 463 U.S. at 836, 103 S.Ct. at 3360 ("it is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans").

Similarly, in *Brown,* the Tenth Circuit declined to recognize a group of employees suffering political discrimination as valid subjects of § 1985(3). *Id.,* 770 F.2d at 905. Plaintiff's alleged status as a member of the Libertarian Party therefore avails him naught in stating a claim under § 1985(3). The sixth and seventh claims are dismissed as to all defendants.

### Fifth Claim

■ Plaintiff's fifth claim for relief alleges denial of counsel in violation of the sixth amendment. Paragraph 50, the operative paragraph of the fifth claim, merely states: "defendants' conduct described above deprived plaintiff of his right to have counsel on his behalf present at appropriate stages of the criminal process."

The only "conduct deprived above" which even arguably invokes the issue of denial of counsel against these defendants is alleged in paragraph 34 of the amended complaint. There, plaintiff avers defendants "did not allow him to call an attorney for a long period of time. No attorney was provided for Bauge."

In pressing for dismissal of the fifth claim, city defendants argue as follows:

There is no constitutional right of which these defendants are aware that requires these defendants to provide an attorney for Bauge. The only right that plaintiff would have would be a right to call an attorney. Although plaintiff is in a position to allege the number of hours, days or weeks he was not allowed to call an attorney, plaintiff merely alleged that he was not allowed to call an attorney "for a long period of time." Such an allegation does not give defendants fair notice of plaintiff's claim; if a "long period of time" is merely a few hours, then defendants can in good faith move to dismiss this claim. Therefore, defendants respectfully request that this court dismiss this claim or, in the alternative, order plaintiff to plead this claim with more specificity.

City Defendants' Brief at 7.

Plaintiff's complete response to this argument consists of the following:

Despite numerous requests for an attorney at the site of the arrest and initial interrogation, and renewed requests during transportation to the jail, and renewed requests while at jail, Bauge was not allowed access to his attorney. Due to the fact that the events transpired on the Friday preceding the long Memorial Day weekend, by the time Bauge was allowed a phone call, it was late afternoon and his attorney was not in the office, and would not return until the following Tuesday. The deliberate denial of counsel, absent an intelligent an [sic] voluntary waiver is a deprivation of rights guaranteed by the Sixth and Fourteenth Amendments, and is actionable under the Civil Rights Act. *Wounded Knee Legal Defense/Offense Committee v. FBI,* 507 F.2d 1281 (8th Cir.1974); *Maclin v. [Paulson],* 627 F.2d 83 (7th Cir. 1980); *Williams v. Liberty,* 461 F.2d 325 (7th Cir.1972). Bauge's prejudice from the denial of counsel is illustrated in part by his extended incarceration on what is

---

of these two cases on the issue of class-based animus. In those two cases, Mr. Justice White instructs us that a determination of which groups are protected under 42 U.S.C. §§ 1981 and 1982 is made not by reference to today's understanding of the term "race," whatever anthropological significance that term may now convey. Rather, we must apply those statutes only to groups which the post-Civil War Congress intended to protect. This last determination is to be made by perusing the congressional debates of 1866 and 1870, which are replete with references to the Scandanavian races, the Chinese, Latin, Spanish, Anglo-Saxon, Blacks, Mongolians, Gypsies, Irish, etc. Since Congress so stated at least 117 years ago, there is no reason for us to consider events occurring or developments in scientific knowledge between now and then. It is Congress—not the courts—that should remain abreast of change.

In any event, putting *Saint Francis* and *Shaare Tefila* aside, I will not diverge from *Wilhelm* and *Brown* in the absence of instructive authority to the contrary.

otherwise a routine charge in county court. Such incarceration, if caused by the denial of counsel, also is a deprivation of liberty without due process.

Response Brief at 6.

Plaintiff's argument is without merit. In *Nees v. Bishop*, 730 F.2d 606, 613 (10th Cir.1984), the Tenth Circuit held "[t]he right to counsel is not triggered by arrest alone." Thus, the mere fact that plaintiff had been arrested did not entitle him to appointment of counsel.

The *Nees* court also determined the sixth amendment right to counsel is violated only where a two-part test has been met: (1) adversary proceedings were initiated against plaintiff, and (2) after those proceedings had been initiated, plaintiff was denied the presence of counsel at a "critical stage" of the proceedings. *Id.* at 611.

In the instant case, plaintiff claims he was held in Denver city and county jails for ten days. Amended Complaint, ¶ 33. He further asserts that during this time "the Denver police searched their files in a vain effort to discover a crime with which to charge Bauge." *Id.* The obvious inference to be drawn from these statements is that adversary proceedings were not commenced against Bauge during the period in which he alleges he was denied access to counsel. Thus, neither prong of the *Nees* test can possibly be met.[3] Consequently, no cognizable claim can be raised for denial of the right to counsel.

Next, as a factual matter, it can scarcely be said that the absence of plaintiff's attorney from his office because of a holiday weekend states a claim that defendants deliberately denied plaintiff of his chosen counsel. Even assuming plaintiff's attorney was not reachable at the time of the telephone call, plaintiff was conceivably capable of leaving a message.

---

**3.** Indeed, the last paragraph of the amended complaint's factual recitation trumpets that "[a]ll criminal charges against Bauge arising out of the events at the airport have been dismissed." *Id.,* ¶ 36. Reading this paragraph by itself, it is unclear whether adversary proceedings, as defined in *Nees,* were ever initiated against plaintiff. On the other hand, though, a

Finally, the last two sentences of the quotation from plaintiff's response brief, *supra,* demonstrates plaintiff's fifth claim is another ill-defined restatement of other claims. For example, any illegality in plaintiff's "extended incarceration," Response brief at 6, is readily redressed by at least plaintiff's first claim for relief. Similarly, the possibility that plaintiff's incarceration period was caused or extended by the absence of counsel, resulting in "a deprivation of liberty without due process," *id.* at 6, does not lead to the ineluctable conclusion that a separate and independent claim for denial of counsel may be stated. Rather, any such fact constitutes one more thread in plaintiff's alleged web of due process deprivation, under the amended complaint's second claim for relief.

### Rule 11?

■ Some further comments about this case are warranted. To date, this action has already occasioned two complaints, the first *pro se.* A third complaint now hovers in the "pleading" stage. Neither of the first two complaints was drafted with serious attention to whether the multifarious allegations of each claim had any basis under established legal doctrine. Such overabundance is often counterproductive. It necessitates the excessive attention of already strained court resources. *See Zukowski v. Howard, Needles, Tammen & Bergendoff, Inc.,* 115 F.R.D. 53 (D.Colo. 1987). Further,

the practice is inimical to the interests of plaintiff for at least two reasons. First, it delays prosecution of the case and increases costs because of the time spent in addressing motions such as those filed in this case. Second, it creates an expanded possibility for reversible error in the event the pleader is persistent or the trial judge is diffident.

common sense reading of this assertion in concert with the statements made in paragraph 33 of the amended complaint leads me to conclude that even if adversary proceedings were initiated, *arguendo,* any such proceedings were commenced some time after the expiration of that period of time in which Bauge contends he was denied access to counsel.

*Zukowski v. Howard, Needles, Tammen & Bergendoff, Inc.,* 657 F.Supp. 926, 929 (D.Colo.1987) (separate *Zukowski* opinion).

Perhaps more significant, however, is the looming importance of Rule 11. Since the motion to file a second amended complaint has already been granted, no Rule 11 sanctions are appropriate at this time. I do caution plaintiff, however, against filing a second amended complaint replete with reformulations of claims dismissed in this order or in the order of August 7, 1987. Moreover, any second amended complaint should refrain from pleading a multitude of claims. Such pleading is invariably redundant and leads to the problems explained in the two *Zukowski* opinions. If the second amended complaint fails to meet the standards enunciated here and in the August 7, 1987 order, Rule 11 sanctions will be imposed. Guidance should be sought from my recent opinion in *Rose v. Kinevan,* 115 F.R.D. 250 (D.Colo.1987).

Accordingly, IT IS ORDERED:

1. The city defendants' motion to dismiss is granted in part and denied in part. Specifically:

a. Plaintiff's third, fifth, sixth, seventh, and eighth claims for relief are dismissed as to all defendants;

b. Plaintiff's ninth, tenth, eleventh, twelfth, thirteenth, and fourteenth claims are dismissed without prejudice as to all defendants;

c. Those portions of plaintiff's first, second, and fourth claims which allege deprivation of rights created by state law are stricken as to all defendants;

d. The order of August 7, 1987 is modified to incorporate dismissal of plaintiff's sixth and seventh claims;

e. Otherwise, the motion is denied. This case shall proceed solely on the non-stricken portions of the first, second, and fourth claims in the amended complaint.

2. Plaintiff shall file his second amended complaint on or before September 21, 1987. The second amended complaint shall not reallege any of the previously dismissed claims, or any portions of those claims, against *any* defendant. The second amended complaint will be scrutinized for compliance with the terms of this order and paragraph 2 of the order portion of the memorandum opinion and order of August 7, 1987.